T.C. Memo. 2002-1


UNITED STATES TAX COURT


MEDA SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16484-99.                    Filed January 2, 2002.


<u>Neil Deininger</u>, for petitioner.

<u>Ann L. Darnold</u> and <u>Michael J. O'Brien</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


THORNTON, <u>Judge</u>:  On April 28, 1999, respondent issued a
notice of final determination denying petitioner's claim for
abatement of interest.  Petitioner timely filed a petition
pursuant to section 6404(i) and Rule 280.[1]  The issue for

_____

[1] Unless otherwise stated, all section references are to the
Internal Revenue Code as amended, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

decision is whether respondent abused his discretion in denying petitioner's request for abatement of interest.

FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate in our findings by this reference.  When she filed her petition, petitioner resided in Greenfield, California.

After their marriage in 1965, petitioner and her then-husband, Frank Smith (Frank), owned and operated a farm in Arkansas.  In 1988, their farm was in financial straits, and petitioner went to work in a laundry.  In February 1990, petitioner separated from Frank and moved to Greenfield, California, where she worked as a live-in caregiver for the elderly.  Sometime in 1991 or 1992, petitioner and Frank divorced.

1988 Tax Return

Petitioner and Frank filed a joint Federal income tax return for 1988.  On the return, they reported $59,925 of farm income and $10,463 of wage income paid to petitioner.  The return shows a tax liability of $18,662, with credit claimed for $1,089 of Federal income taxes withheld from petitioner's wages, resulting in $17,573 of tax owed (the 1988 liability).  No payment was included with the return.

In July 1989, respondent contacted petitioner and Frank in writing regarding the 1988 liability.  In response, petitioner

wrote respondent a letter, dated July 21, 1989, and signed by Frank, stating "we just don't have the money to pay our taxes. * * * We would like to make some kind of payment agreements."

In August 1990 (after petitioner had moved to California), respondent determined that Frank's income was insufficient to fund a payment arrangement.[2]  Respondent classified the 1988 liability as uncollectible.

Collection Action on the 1988 Liability

After 1988, petitioner filed her Federal income tax returns using a Greenfield, California, address.[3]  On her 1989 return, petitioner claimed a $335 refund.  On her 1993 return, she claimed a $1,083 refund.[4]  In each instance, respondent applied the claimed refund to the unpaid 1988 liability.  In each instance, petitioner received notification from respondent, shortly after filing her return, that the refund had been applied

---

[2] The record is unclear as to whether respondent considered petitioner's wage income or other assets in denying the request for a payment arrangement.

[3] For 1989 and 1990, petitioner claimed a filing status of married filing separately.  For subsequent years, she claimed a filing status of single.

[4] On her Federal income tax returns for 1990, 1991, 1992, and 1994, petitioner reported tax liabilities which she paid when she filed the returns.

to the 1988 liability.  In neither instance did the notification state the outstanding balance of the 1988 liability.[5]

On her 1994 return, petitioner reported taxable wages of $50,560.  On the basis of this information, on May 29, 1995, respondent determined that the 1988 liability should no longer be classified as uncollectible.  On August 7, 1995, respondent assigned petitioner's case to revenue officer Garrie Ollie (Ollie) for collection action.

On April 5, 1996, Ollie issued to petitioner's employer in Salinas, California, a notice of levy on petitioner's wages with respect to the 1988 liability.  The notice shows an unpaid balance on the 1988 liability of $16,292, plus statutory additions (late-payment penalties and interest) of $19,391, for a total amount due of $35,683.  Petitioner then contacted Ollie and entered into an installment agreement to pay the 1988 liability. In June 1996, petitioner began making monthly payments.  On January 22, 1997, petitioner made a lump-sum payment of $12,939 in satisfaction of the remaining balance on the 1988 liability.

---

[5] The text within each notification describes the 1988 liability as being "under" Frank's Social Security number.  Each notification, however, shows petitioner's taxpayer identification number (i.e., her Social Security number) at the top and bears the caption "OVERPAID TAX APPLIED TO OTHER FEDERAL TAXES OWED ON SECONDARY SOCIAL SECURITY NUMBER" (i.e., on petitioner's Social Security number).

Petitioner's Requests for Abatement of Interest and Penalties

In March 1997, petitioner filed a Form 843, Claim for Refund and Request for Abatement, requesting abatement of $4,232 of late-payment penalties with respect to the 1988 liability. By letter dated May 1, 1997, respondent denied her claim. Petitioner made no appeal.

On October 11, 1998, petitioner's representative (an enrolled agent) sent respondent a letter informally requesting abatement of interest and penalties with respect to the 1988 liability. Respondent disallowed petitioner's claim for abatement of interest and declined to reconsider his prior denial of petitioner's claim for abatement of penalties.

Petitioner appealed this determination to the Internal Revenue Service (IRS) Office of Appeals (Appeals). On April 27, 1999, Appeals abated 75 percent of the late-payment penalties and related interest, resulting in a refund to petitioner. On April 28, 1999, respondent issued a notice of final determination, denying petitioner's request for abatement of interest.

OPINION

Under section 6404(e)(1), the Commissioner may abate interest on any deficiency or payment of income, gift, estate, and certain excise taxes to the extent that the deficiency or any error or delay in payment is attributable to erroneous or dilatory performance of a ministerial act by an officer or

employee of the Commissioner.[6]  Such an error or delay in
performing a ministerial act is taken into account only if it is
in no significant aspect attributable to the taxpayer and only if

_____

[6] Sec. 6404(e) provides:

> Assessments of Interest Attributable to Errors and
> Delays by Internal Revenue Service.--
>
> (1) In General.--In the case of any assessment of
> interest on--
>
> > (A) any deficiency attributable in whole
> > or in part to any error or delay by an
> > officer or employee of the Internal Revenue
> > Service (acting in his official capacity) in
> > performing a ministerial act, or
> >
> > (B) any payment of any tax described in
> > section 6212(a) to the extent that any error or
> > delay in such payment is attributable to such
> > officer or employee being erroneous or dilatory
> > in performing a ministerial act,
>
> the Secretary may abate the assessment of all or any
> part of such interest for any period.  For purposes of
> the preceding sentence, an error or delay shall be
> taken into account only if no significant aspect of
> such error or delay can be attributed to the taxpayer
> involved, and after the Internal Revenue Service has
> contacted the taxpayer in writing with respect to such
> deficiency or payment.

In 1996, sec. 6404(e) was amended to permit abatement of
interest for "unreasonable" error or delay resulting from the
performance of ministerial or "managerial" acts.  Taxpayer Bill
of Rights 2, Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat.
1452, 1457 (1996).  The amendment applies to tax years
beginning after July 30, 1996.  Id. sec. 301(c), 110 Stat. 1457.
Therefore, the amendment is inapplicable to the instant case.  We
intend no inference that we would reach a different result in
this case if the amendment were applicable.

it occurs after the IRS has contacted the taxpayer in writing regarding the deficiency or payment.

Section 6404(e) is not intended to be "used routinely to avoid payment of interest", but rather is to be "utilized in instances where failure to abate interest would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1985), 1986-3 C.B. (Vol. 3) 1, 208.

For interest abatement claims made after July 30, 1996, the Tax Court has jurisdiction to determine whether the Commissioner's failure to abate interest under section 6404(e) was an abuse of discretion.  See sec. 6404(i)(1); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  Where the taxpayer has already paid the interest that is the subject of the request for abatement, this Court has jurisdiction to determine the amount of any overpayment to be refunded or credited to the taxpayer.  See secs. 6404(i)(2)(B), 6512(b).

Petitioner contends that respondent failed to request financial information from her and to take other steps prescribed by the Internal Revenue Manual before classifying the 1988 liability as uncollectible, without notifying her of the unpaid balance.  On brief, petitioner contends that respondent's failure to take these steps "left her with the reasonable belief she didn't owe the tax", and thus caused her to delay paying off the

1988 liability.  Petitioner seeks abatement and refund of all interest that accrued after August 1990, when respondent classified the 1988 liability as uncollectible.

Because respondent has determined no deficiency, section 6404(e)(1)(A) is inapplicable.  We construe petitioner's claim as arising under section 6404(e)(1)(B).  To be entitled to relief under that section, petitioner must show that her delay in paying the 1988 liability was attributable to an IRS officer or employee being erroneous or dilatory in performing a ministerial act, and that no significant aspect of the delay can be attributed to her. Petitioner has failed to do so.

Respondent's determination that the 1988 liability should be classified as uncollectible required the exercise of discretion and judgment.  Hence it was not a ministerial act, see sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), and cannot provide the requisite basis for abating interest under section 6404(e).

Moreover, even if we were to assume, for sake of argument, that respondent's officers or employees erroneously performed (or failed to perform) one or more prescribed ministerial acts in classifying the 1988 liability as uncollectible, as petitioner alleges, petitioner has still failed to establish that any such missteps were the cause of her delayed payment of the 1988 liability.  To the contrary, the evidence shows that the delay in

payment resulted, quite simply, from petitioner's failure to pay the 1988 liability that she and Frank reported on their 1988 joint return or else to ensure that Frank was taking care of it. The evidence does not suggest that petitioner's failure to pay the 1988 liability resulted from respondent's classifying it as uncollectible. Indeed, the evidence does not indicate when petitioner might have first become aware that respondent had classified the 1988 liability as uncollectible.

On brief, petitioner acknowledges that "there is no question that Petitioner was aware of the [1988] tax liability at the time the return was filed". Similarly, petitioner acknowledges that she "knew at the time she left her husband there was an outstanding liability". She states on brief that she "did not lack the ability to pay the liability after she left her husband in February, 1990". Nevertheless, she claims that no significant aspect of the delay in payment was attributable to her, because respondent failed to send her additional notices of the balance due. Although intrigued by the novelty of a complaint that the IRS has failed to hound the taxpayer enough, we find therein no basis to grant petitioner relief.

In July 1989, respondent sent petitioner and Frank a notification of the 1988 liability they had reported on their joint return. Respondent was under no obligation to send additional notices. Whether respondent acted improvidently in

classifying the 1988 liability as uncollectible or in failing to take more vigorous collection sooner is immaterial.  This conclusion is bolstered by the legislative history of section 6404, which states:  "if a taxpayer files a return but does not pay the taxes due, this provision would not permit abatement of this interest regardless of how long the IRS took to contact the taxpayer and request payment."  H. Rept. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208.

This is not a case where, after reporting a tax liability on the return and failing to pay it, the taxpayer was misled by incorrect information from respondent to make payment of less than the full balance due.  Cf. Douponce v. Commissioner, T.C. Memo. 1999-398.  Respondent did nothing that would have misled petitioner into believing that the 1988 liability was less than she and Frank reported on their 1988 joint return or that the liability had been previously satisfied.  As far as the evidence shows, respondent never notified petitioner that the 1988 liability had been classified as uncollectible.  In 1990, respondent notified petitioner that her claimed 1989 refund was being applied to the 1988 liability.  In 1994, petitioner received a similar notification shortly after claiming a refund on her 1993 tax return.  As far as the record reveals, in neither instance did petitioner inquire of respondent why her claimed

refunds were being applied against the 1988 liability or what the remaining balance was. We infer that petitioner either knew or was content not to know the answers. Only after respondent issued a wage levy to petitioner's employer did petitioner act to satisfy the 1988 liability.

With respect to respondent's notifications that her 1989 and 1993 refunds were being applied to the 1988 liability, petitioner argues that respondent's failure to state the balances due, to segregate her and Frank's accounts, and to include her Social Security number on the notifications constituted "malfeasance" by respondent in performing his duty to collect taxes.[7] Petitioner concedes on brief, however, that any such failure "does not legally justify the abatement of interest." We agree.

On brief, petitioner suggests that the equities should lie with her, claiming that she was the innocent victim of an abusive marital situation that unfairly left her holding the bag for the 1988 liability. On reply brief, however, petitioner concedes that she does not qualify for relief under section 6015. Given that petitioner has conceded liability for the underlying tax, it follows that interest properly accrued on that liability for the

---

[7] In fact, as previously noted, petitioner's Social Security number did appear on the notices, which expressly refer to Federal taxes owed on the "secondary social security number" (i.e., petitioner's). In any event, respondent's application of her 1989 and 1993 refunds to the 1988 liability should have alerted petitioner that respondent believed she remained liable on the 1988 liability.

period it remained unpaid. See sec. 6601. Even if we were to assume, arguendo, that petitioner's delay in paying the 1988 liability was partly attributable to her marital difficulties, this circumstance would not tend to show that the delay was attributable to ministerial error or delay by the IRS, as required for her to establish entitlement to relief pursuant to section 6404(e).

In sum, we are unable to conclude that there was any erroneous or dilatory performance of a ministerial act by respondent that caused or contributed to the delay in petitioner's payment of the 1988 liability, or that the delay was not in significant part attributable to petitioner. Consequently, respondent's refusal to abate petitioner's interest under section 6404 was not an abuse of discretion.

To reflect the foregoing,

Decision will be entered for respondent.