T.C. Memo. 2009-262

UNITED STATES TAX COURT

ESTATE OF GERTRUDE M. BALL, DECEASED, PHILIP B. O'BRIEN,
ADMINISTRATOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25175-07.                    Filed November 18, 2009.

<u>Alfred J. O'Donovan</u>, for petitioner.

<u>Luanne S. Dimauro</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  The parties submitted this case fully
stipulated pursuant to Rule 122.  The issue for decision is
whether respondent's denial of the Estate of Gertrude M.

Ball's (the estate) claim for abatement of interest pursuant to the provisions of section 6404 was an abuse of discretion.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1994, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

We adopt as findings of fact all statements contained in the stipulation of facts. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

The underlying matter involves the 1994 Federal income tax liability of Gertrude M. Ball (sometimes referred to as Ms. Ball or decedent), who died testate on March 31, 1995, before her 1994 income tax return was filed. The decedent resided in Rhode Island when she passed away. Ellen O'Brien (Ms. O'Brien), the decedent's daughter, was originally appointed executrix of the estate and represented the estate until she died on June 6, 2008. On February 13, 2009, Philip O'Brien was appointed successor fiduciary of the estate.

Ms. Ball resided in the Town of New Shoreham (Block Island), Rhode Island (the town), for most of her adult life. Before 1994 Ms. Ball sold a one-half interest in a parcel of real property to the town after it threatened to condemn the property for public use. Ms. Ball had a low basis in that property. Her attorney at the time (the original attorney) advised Ms. Ball that she could

defer recognition of gain on the sale of the property if she reinvested the sale proceeds in like-kind property by the end of the second year following the year in which the sale occurred. The original attorney failed to inform Ms. Ball that her basis in the original property would transfer over to any new property acquired.

Following the original attorney's advice, Ms. Ball reinvested the sale proceeds in a residence in South Kingston, Rhode Island (the South Kingston real property), and leased that property to an individual whom she knew. Unbeknownst to Ms. Ball, the lease, drafted by the original attorney, gave the lessee an option to purchase the South Kingston real property. On October 10, 1994, the lessee exercised the purchase option, and the sale closed in December 1994. Ms. Ball realized a $381,080 gain, and incurred a $95,704 income tax liability, on the sale of the property.

The original attorney, who had prepared Ms. Ball's Federal income tax returns for many years, filed on Ms. Ball's behalf a request for a tax return filing extension. The extension request indicated that Ms. Ball had an expected 1994 income tax liability of $28.

At a time not specified in the record, the original attorney was discharged, new counsel was retained, and an accountant was engaged to prepare Ms. Ball's 1994 Federal income tax return. On

the basis of the information provided to them, the accountant and new counsel agreed that the gain recognized from the sale of the South Kingston real property should be reported on Ms. Ball's 1994 Federal income tax return.

Ms. O'Brien, as the estate's executrix, filed a Form 1040, U.S. Individual Income Tax Return, dated May 30, 1996, for tax year 1994. That return reported the gain from the sale of the South Kingston real property and the resulting income tax liability, but the liability was left unpaid.

On or about July 31, 1996, the Commissioner filed a proof of claim against the estate in the Probate Court for the Town of New Shoreham (Block Island), Rhode Island, indicating that $145,269.30 in income tax, interest, and penalties was due the United States. Substantially all of this liability was attributable to Ms. Ball's 1994 income tax liability.[1] On at least seven occasions the estate received letters or notices from the Internal Revenue Service (IRS) stating that tax was owed and requesting that the amount stated in the proof of claim be paid. The first of these letters was sent by the IRS on August 19, 1996.[2] The IRS's letter dated October 7, 1996, made the

---

[1]Ms. Ball also had an outstanding Federal income tax liability of $1,085.72, plus interest, dating from 1991.

[2]The remaining letters and notices were dated Sept. 2, 1996, Oct. 7, 1996, Apr. 9, 1997, Apr. 22, 1997, May 30, 2001, and Jan. 30, 2002.

situation crystal clear when it stated: "URGENT! Immediate action is required. We have made several attempts to collect the tax you owe, but we still haven't received your full payment. If you don't respond, we may seize your paycheck, bank account, auto, or other property. We may also file a Federal Tax Lien."

During this time the estate sued the original attorney, alleging negligence in failing to advise Ms. Ball as to the potential tax implications should the lessee exercise his option to purchase the South Kingston real property and the attorney's failure to inform Ms. Ball and her family that had Ms. Ball retained ownership of the South Kingston real property at the time of her death, her family would have received a step-up in the property's basis. That lawsuit was settled for an amount, net of attorney's fees, which approximated the amount of the income tax reported as due to the United States and the State of Rhode Island for the year 1994.

When Ms. Ball died, the estate owned partial interests in four condominium units and one single-family residence (the real properties). The remaining interests in the real properties were held by members of Ms. Ball's family. One of the condominium units was held free of debt. The other properties were subject to mortgages.

Between May 30, 1996, and November 12, 1998, the estate sold all of its interests in the real properties. With respect to

each sale, the estate filed a Form 4422, Application for Certificate Discharging Property Subject to Estate Tax Lien.[3] In each case the IRS issued a Form 792, United States Certificate Discharging Property Subject to Estate Tax Lien.

By check dated December 21, 2004, the estate paid the tax of $95,704 owed for 1994. The estate requested on that date that all applicable penalties and accrued interest be abated. The estate justified the abatement request on the basis of the original attorney's negligence.

In May 2005 the IRS agreed to abate the penalties. The IRS did not agree to abate the interest but instead requested that a revised request be submitted. On December 18, 2006, the estate filed a Form 843, Claim for Refund and Request for Abatement, checking Box 4a, Request for abatement or refund of interest as a result of IRS errors or delay. On a statement attached to Form 843, the estate maintained:

> Internal Revenue Code (Code) §6404(e) provides that the Service may abate all or any part of interest attributable to unreasonable errors or delays by the Service in performing a ministerial or managerial act if no significant aspect of such error or delay can be attributed to the taxpayer involved and after the Service has contacted the taxpayer in writing with respect to such payment;

The IRS disallowed the estate's request for abatement of interest by letter dated January 22, 2007. The letter stated: "We have

---

[3]The Forms 4422 were filed on May 16 and June 24, 1996, Dec. 10, 1997, June 9, 1998, and Oct. 14, 1998, respectively.

determined that the interest due for this period was not the result of the failure of an employee of the Internal Revenue Service to perform a ministerial or managerial act." The estate appealed the denial of its interest abatement request to the IRS Appeals Office via a letter dated February 6, 2007. On May 4, 2007, the IRS Appeals Office issued a final determination letter sustaining the denial of the interest abatement request, stating: "We did not find any errors or delays on our part that merit abatement of interest in our review of available records and information."

## Discussion

For tax years beginning before July 31, 1996, the Commissioner had the authority to abate the assessment of interest with respect to the payment of income tax attributable "to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act," sec. 6404(e)(1)(A), or "any payment of tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act," sec. 6404(e)(1)(B), but "only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in

writing with respect to such deficiency or payment."  Sec.

6404(e)(1) (flush language).[4]

The regulations in effect during 1994 provided:

The term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place.  A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act.

Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52

Fed. Reg. 30163 (Aug. 13, 1987).

If the Commissioner denies a taxpayer's abatement of

interest request, the taxpayer may petition this Court for

review.  Sec. 6404(h)(1); see <u>Hinck v. United States</u>, 550 U.S.

501, 506 (2007) (holding that the Court is the exclusive forum

for judicial review of the Commissioner's refusal to abate

interest); <u>Baral v. Commissioner</u>, T.C. Memo. 2009-113.  Since the

Commissioner's power to abate interest is discretionary, (1) we

give due deference to that discretion, and (2) in order to

prevail, the taxpayer must prove that the Commissioner exercised

his discretion arbitrarily, capriciously, or without sound basis

in fact or law.  <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

---

[4]Sec. 6404(e) was amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1457 (1996), to permit interest abatement for interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996, arising from ministerial or managerial delays.

Our inquiry in this latter regard is a factual one.  See <u>Chakoian v. Commissioner</u>, T.C. Memo. 2009-151; <u>Boyd v. Commissioner</u>, T.C. Memo. 2000-16.  And the taxpayer bears the burden of proof.  Rule 142(a).

To be eligible for relief, the taxpayer must establish a correlation between the error or delay by the IRS officer or employee and a specific period for which interest should be abated as a result of that error or delay.  See <u>Bo v. Commissioner</u>, T.C. Memo. 2005-150; <u>Palihnich v. Commissioner</u>, T.C. Memo. 2003-297.  The estate acknowledges that it cannot point to a specific period for which interest should be abated.

In <u>Donovan v. Commissioner</u>, T.C. Memo. 2000-220, the taxpayer failed to identify specific periods for which he requested an abatement of interest.  We therein declined to order the requested interest abatement, stating:

> In effect, petitioner is not so much seeking an abatement of interest as he is an exemption from it.  Characterized in that manner, and among other infirmities, the scope of petitioner's request, simply put, is beyond that contemplated by the statute, which the Congress did not intend would "be used routinely to avoid payment of interest". * * * [Fn. ref. omitted.]

The legislative history of section 6404(e)(1) states:

> This provision does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of the time period.  Similarly, if a taxpayer files a return but does not pay the taxes due, this provision would not permit abatement of this interest regardless of how long the IRS took to contact the taxpayer and request payment.

H. Conf. Rept. 99-426, at 844-845 (1985), 1986-3 C.B. (Vol. 2) 1, 844-845.

The estate alleges that the IRS created a delay by not being aggressive (i.e., hounding the estate) in seeking collection of the estate's unpaid income tax liability; and, as a consequence, the estate missed its chance to use the proceeds from the sale of the real properties to satisfy its outstanding income tax liability.  Specifically, the estate posits that because the IRS did not intervene during the sale of the real properties, Ms. O'Brien, as executrix of the estate, did not realize that there was an outstanding tax debt that needed to be paid.

> There was no personal follow up by the Commissioner of the filing of the Proof of Claim in the Probate Court or the mailing of multiple from letters, some unsigned, sent to the taxpayer and demanding payment.  Had some follow up occurred, the Taxpayer, naturally, would have been well advised to be represented by her accountant or attorney. However, in this context, the Service's representative would have learned of the Taxpayer's intent to sell property to reduce debt which likely would have been converted to a tax collection opportunity.

We do not find the estate's position persuasive.

The holding in Cannon v. Commissioner, T.C. Memo. 2002-205, is instructive in resolving this case.  There, the taxpayer sought abatement of interest with respect to a Federal income tax liability assessed on the basis of amounts reported on her original and amended Federal income tax returns.  In Cannon, as in this case, no audit took place and no notice of deficiency was

issued.  In declining to order an abatement of interest, we relied on the legislative history of the statute.

The estate has failed to demonstrate that the delay in payment of the 1994 income tax is the result of anything other than its own conduct.  The estate has not shown any delay by an IRS officer or employee.  Indeed, the estate acknowledges in its brief that an IRS representative contacted it soon after the estate's income tax return was filed on May 30, 1996, stating:

> Respondent did not delay at all in contacting the taxpayer. Indeed, as stated above, the Respondent filed Amendment No. 1 of Proof of Claim (dated 03/13/96) on or about July 31, 1996 citing the 1994 income tax return but not indicating when the tax lien arose.

The record demonstrates that the IRS sent letters to the estate on seven occasions, beginning as early as August 19, 1996, reminding the estate of its tax liability and warning that the estate could be subject to lien or levy actions if there was no response.  The IRS sent these letters to the estate during and after the period the estate sold the real properties.  The only additional action the IRS could have taken at this point would have been to initiate a collection action (e.g., a levy), and the initiation of a collection action is not a ministerial activity. Mathia v. Commissioner, T.C. Memo. 2009-120.

As we stated in Smith v. Commissioner, T.C. Memo. 2002-1, the legislative history of section 6404(e)(1) reveals that section is intended to be used solely in instances where failure

to abate interest would be perceived as grossly unfair. In this case, we do not perceive respondent's rejection of the estate's requested interest abatement to be grossly unfair.

To conclude, we find that the interest that accrued on the estate's 1994 Federal income tax is not the result of an IRS officer or employee "being erroneous or dilatory in performing a ministerial act" and that respondent did not abuse his discretion in denying the estate's request for an abatement of interest.

To reflect the foregoing,

Decision will be entered for respondent.