T.C. Memo. 2003-289

UNITED STATES TAX COURT

CHARLES R. GODWIN, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11382-01L, 498-02,     Filed October 14, 2003.
14817-02L.

<u>Charles R. Godwin</u>, for petitioners.

<u>Linda J. Wise</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, <u>Judge</u>:  In docket Nos. 11382-01L and 14817-02L (the
section 6330 cases), petitioners primarily dispute respondent's
assessment of additions to tax and refusal to abate interest on

[1]Cases of the following petitioners are consolidated
herewith:  Charles R. and Linda S. Godwin, docket No. 498-02 and
Linda S. Godwin, docket No. 14817-02L.

the underpayment of tax shown on their 1997 Federal income tax return.[2]  In docket No. 498-02 (the deficiency case), petitioners dispute the deficiency and addition to tax determined by respondent in their 1997 Federal income tax.  The section 6330 cases and the deficiency case have been consolidated for trial, briefing, and opinion.

In the section 6330 cases, respondent assessed the underpayment (which has since been paid) of $281,340.82 in petitioners' 1997 joint Federal income tax shown on their 1997 return, additions to tax of $4,464.01 under section 6654(a) for failure to pay estimated tax, $39,331.01 under section 6651(a)(1) for late filing, and $15,848.72 under section 6651(a)(2) for late payment, and interest of $21,984.63.  The additions and interest have not been paid and remain subject to respondent's proposed levy.

In the deficiency case, respondent determined a deficiency of $208,625.87 in petitioners' 1997 joint Federal income tax attributable to the disallowance of claimed casualty losses and an addition of $7,752.25 under section 6651(a)(1) for late filing.

---

[2]Unless otherwise specified, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After giving effect to petitioners' concession,[3] the issues remaining for decision are:

1. Whether petitioners are liable for additions to tax under sections 6654(a) and 6651(a)(2) in the section 6330 cases, and section 6651(a)(1) in the section 6330 cases and the deficiency case. We hold petitioners are liable for all those additions;

2. whether petitioners are entitled to abatement of interest on the tax liability reported on their 1997 return. We hold petitioners are not entitled to any interest abatement;

3. whether petitioners are entitled to deductions for casualty losses on their 1997 return in excess of the amounts allowed in the notice of deficiency. We hold petitioners are not entitled to any such deductions.

For clarity and convenience, following a statement of general findings of fact, we set forth the findings of fact and opinion with respect to each issue under a separate heading.

General Findings of Fact

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in

---

[3]Petitioners have conceded respondent's upward adjustment of the casualty loss they claimed with respect to their vacation house located in Baldwin County, Ala., on the Gulf of Mexico. See infra notes 8 and 9.

Atmore, Escambia County, Alabama, when they filed their petitions.

Petitioners have been married since December 18, 1967, and have filed joint Federal income tax returns for all years, including their 1997 tax year at issue in this case. Charles R. Godwin (petitioner) is an attorney who has been engaged in the practice of law since May 1974. Petitioner worked in his law practice 12 hours per day, 6 days per week throughout 1997 and 1998. Petitioner's first job as an attorney was as an estate and gift tax attorney with the Internal Revenue Service (IRS). During the year in issue, petitioner practiced law at his office in Atmore, Alabama. Petitioner is admitted to practice before this Court and is the attorney of record in these cases. Linda S. Godwin (Mrs. Godwin) is a teacher with the Alabama public school system.

## Issue 1. Additions to Tax Under Sections 6654(a) and 6651(a)(1) and (2)

### FINDINGS OF FACT

Sometime during April-May 1997, petitioner received a legal fee of "a little over a million dollars" (the $1 million fee) for representing a client in a personal injury case. The $1 million fee was the largest fee petitioner had ever received. The $1 million fee caused petitioners' taxable income to be higher for 1997 than it has ever been before or since for tax years covered by the record in this case.

Apart from withholdings from Mrs. Godwin's teacher's salary, petitioners did not pay estimated taxes on any of their 1997 income. Instead, during 1997, petitioners spent "a lot" of the $1 million fee to build their residence in Atmore, Alabama (the Atmore residence), which had a cost basis of $989,158. Petitioners also spent a portion of the $1 million fee to purchase 1,068 acres of timberland in Geneva County, Alabama (the timberland). Petitioner visited the timberland several times in 1998, primarily for recreational purposes but also to aid his efforts to resell a portion of the property. Petitioners also made charitable contributions that substantially exceeded their contributions in prior and subsequent years.

Petitioners resided and owned real property in counties of Alabama affected by various natural disasters in 1997 and 1998. On May 3 and October 24, 1997, earthquake tremors occurred in Escambia County, Alabama (hereinafter the May earthquake and the October earthquake and collectively the 1997 earthquakes), where petitioners were building the house that constitutes their principal residence. On July 25, 1997, President Clinton designated three Alabama counties, including Baldwin County where petitioners own a vacation house on the Gulf of Mexico (the bay house), as disaster areas as a result of Hurricane Danny, which occurred in July 1997. On September 30, 1998, President Clinton designated 14 Alabama counties, including Baldwin and Escambia

Counties, as disaster areas as a result of Hurricane Georges, which occurred in September 1998.

Petitioners' 1997 Federal income tax return was originally due April 15, 1998. In an August 14, 1998, letter to the IRS Memphis Service Center (MSC), petitioners stated they had filed timely a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, to extend the time to file their 1997 return to August 15, 1998. In the same letter, petitioners requested an additional 4-month extension to December 15, 1998, to file their 1997 return and pay the taxes due. Petitioners asserted the following reasons for their request:

1. * * * We have experienced some personnel changes in connection with the bookkeeping, accounting, and tax preparation function of our law practice. For this reason, we have incurred considerable delay in recording, documenting, compiling, classifying and reviewing the necessary financial data from which the returns could be prepared. * * *

2. During calendar year 1997, we earned the highest income we have ever earned and accordingly, experienced the highest tax liability, the exact amount of which we are still in the process of determining. We need the additional time to prepare and file reasonable accurate returns and to pay the tax.

3. Substantial earnings from 1997 were placed in real estate, part of which was earmarked or designated to be used to pay the tax liability. Several such parcels of real estate are listed for sale and we expect them to sell and generate funds for payment of tax within the next four (4) months.

4. Payment of tax at this time would create an unreasonable hardship and borrowing would create extraordinary expenses which would impair the cash flow in the operation of the law practice.

5.   * * * The year to year fluctuations in our income and expenses have necessitated requests for extensions of time to file and pay tax in the past.  We have always fulfilled our responsibility in this regard with your kind assistance and cooperation.  We fully intend to maintain and pursue that excellent working relationship.

In a September 15, 1998, letter, MSC informed petitioners it could not grant their request for the additional extension because it had no record of having granted petitioners an original 4-month extension of time for filing.  MSC also requested a copy of the Form 4868 petitioners claimed they had filed.

On October 6, 1998, the IRS issued a news release (the news release) applicable to taxpayers residing in Escambia County affected by Hurricane Georges that stated:  "most tax returns and payments that normally would be due on October 15 will not be due until November 16."

By letter dated November 16, 1998, petitioners provided MSC a copy of an April 15, 1998, letter in which they confirmed mailing a Form 4868 as an extension of time "to file the federal income tax return Form 1040 and to pay the tax due."  The Form 4868 allegedly mailed on April 15, 1998, reported the following regarding petitioners' 1997 tax liability:

```
Part II  Individual Taxes
    4  Total tax liability for 1997          $ unknown
    5  Total 1997 payments                     5,013.80
    6  Balance.  Subtract 5 from 4             unknown
Part III  Gift/GFT Tax [No entries]
Part IV  Total
    9  Total liability.  Add lines 6,7, and 8  $ unknown
    10 Amount you are paying                     0.00
```

Petitioners did not pay any Federal income tax when they filed Form 4868.  In the November 16, 1998, letter, petitioners asserted the following additional reasons for their request for extension of time to December 15, 1998, to file their 1997 return and pay the tax due:

    1.  The extraordinary events which occurred during the calendar year 1997 and subsequently.  These included very high income, investment in real estate which we intended to sell to pay taxes and which did not sell in the manner, for the price and within time we had anticipated.

    2.  The preparation of the return required consideration of the casualty loss of our bay house near Fort Morgan as a result of Hurricane Danny in July, 1997.  Additionally, we suffered substantial damages to our home here in Atmore, Alabama and less severe damages to our law office here as a result of Hurricane Georges during the latter part of September, 1998.  The aftermath of damage to our home, the necessary repair of which was not all covered by insurance, the electrical power outages at our office and at home frustrated our good faith efforts to file the return and pay the tax.

    3.  We have additional personnel changes since August 14, 1998, including the bookkeeper who was assisting with our tax records in the preparation of the return.

    4.  The law practice income which is our primary source of income for 1998 has not reached the level of income

necessary to promptly pay the taxes as it had done in years past. This is primarily because the 1997 law practice income was extraordinarily high, followed by comparatively much lower income in 1998.

5. We are now negotiating a loan at various lending institutions for the purpose of paying the tax.

On December 21, 1998, MSC received petitioners' 1997 tax return. On their 1997 return, petitioners reported net profit of $1,458,835.02 from petitioner's law practice. On their 1997 return, petitioners deducted $526,833 for casualty losses resulting from Hurricane Danny, the 1997 earthquakes, and Hurricane Georges. On their 1997 return, petitioners reported cash gifts to charity of $285,010, substantially exceeding their total charitable contributions for the 3 immediately preceding years. On their 1997 return, petitioners reported total tax liability of $291,340.82 for 1997. Petitioners made a $10,000 payment by check with their 1997 return, leaving unpaid the remaining $281,340.82 tax liability shown thereon.

Petitioners, in the cover letter dated December 14, 1998, with which they filed their 1997 return, requested an extension of time to pay the tax for a reasonable time from the date of filing the return, for reasons substantially similar to those asserted in their letters of August 14 and November 16, 1998.

Respondent assessed the unpaid tax liability reported on petitioners' 1997 return and accrued interest and additions to

tax under section 6654(a) for failing to pay estimated taxes, section 6651(a)(1) for late filing of their 1997 return, and section 6651(a)(2) for late payment of their tax liability.

On October 24, 1999, respondent sent petitioners a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to their unpaid 1997 income tax liability, additions to tax, and interest. By letter dated November 4, 1999, petitioner sent respondent a Form 12153, Request for a Collection Due Process Hearing.

By November 24, 1999, during the pendency of petitioners' section 6330 hearing, petitioners had paid the remaining balance of the unpaid 1997 income tax liability shown on their return; however, the record does not contain the exact date or dates of petitioners' payments. At the hearing, petitioners contested their liability for unpaid additions to tax and interest. Petitioners did not raise any collection issues other than that they had tried to compromise the entire liability for tax, additions, and interest with an offer to pay $100,000. The Appeals officer at the hearing upheld the assessment of the additions and accrued interest and sustained respondent's levy.

On August 7, 2001, respondent sent petitioner by certified mail a notice of determination under section 6330. On August 15, 2002, respondent sent petitioner by certified mail a supplemental notice of determination under section 6330. On August 15, 2002,

respondent sent Mrs. Godwin by certified mail a notice of determination under section 6330 (the Linda Godwin notice). In the section 6330 cases, petitioner filed a petition for redetermination on September 10, 2001, and both petitioners filed a petition for redetermination on September 13, 2002.[4]

On November 9, 2001, respondent sent petitioners by certified mail a notice of deficiency for their 1997 tax year for a deficiency attributable to the disallowance of claimed casualty losses from the 1997 earthquakes, Hurricane Danny, and Hurricane Georges and for a section 6651(a)(1) addition to tax. On January 7, 2002, petitioners filed a joint petition for redetermination in the deficiency case.

The section 6654(a) and 6651(a)(1) and (2) additions to tax in the section 6330 cases and the section 6651(a)(1) addition to tax in the deficiency case are now in dispute.

OPINION

Our ultimate finding, notwithstanding the natural disasters and the changes in clerical and bookkeeping personnel at petitioner's law office, is that petitioners did not exercise due

---

[4]Respondent moved to dismiss for lack of jurisdiction as to Mrs. Godwin under docket No. 11382-01L because of issues regarding petitioner's authority to represent her. We granted respondent's motion, which was thereafter rendered moot by petitioner's admission to practice before this Court, and respondent's sending Mrs. Godwin a notice of determination under sec. 6330, in response to which petitioner filed a petition with the Court on behalf of Mrs. Godwin in docket No. 14817-02L.

care to set aside otherwise available liquid funds to pay estimated tax during 1997 and 1998 or to pay their 1997 Federal income tax liability on time in 1998. They disabled themselves from so doing by using the proceeds of the $1 million fee to invest in timberland, pour funds into building their new house, and substantially increase their charitable contributions, rather than set aside some portion of the fee in readily accessible Treasury bills, certificates of deposit, or other money-market obligations.

After making some preliminary observations about judicial review, burden of proof, and respondent's extensions of time to file and pay, we hold petitioners are liable for the section 6654(a) and 6651(a)(2) additions to tax for late payments and the section 6651(a)(1) addition to tax for late filing. We also sustain respondent's levy, rejecting petitioners' claim that the Appeals officer abused his discretion.

The amounts of some of the additions to tax set forth in respondent's trial memorandum appear facially incorrect and do not correspond to the amounts set forth in the October 24, 1999, notice of intent to levy. Petitioners did not object to the absence from the record of Form 4340, Certificate of Assessment, or request inclusion of that form in the record to verify the validity of the assessments. See secs. 6330(c)(1), 6203; sec. 301.6203-1, Proced. & Admin. Regs. Respondent conceded on brief

that Rule 155 computations would be necessary. We will therefore order Rule 155 computations in both the section 6330 cases and the deficiency case. See <u>Sponberg v. Commissioner</u>, T.C. Memo. 2002-177.

## 1. Judicial Review and Burden of Proof

If the taxpayers in a section 6330 case did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability, the Court reviews the underlying tax liability de novo; the Court reviews for abuse of discretion the administrative determination of the IRS Appeals Office to collect the tax liability. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).

We review de novo respondent's determinations that petitioners are liable for the section 6654(a) and 6651(a)(1) and (2) additions to tax. See <u>Downing v. Commissioner</u>, 118 T.C. 22, 29 (2002); <u>Joye v. Commissioner</u>, T.C. Memo. 2002-14. If we should find petitioners are liable for those additions to tax, we would review for abuse of discretion respondent's determinations to proceed to collect those additions. See <u>Downing v. Commissioner</u>, <u>supra</u>; <u>Joye v. Commissioner</u>, <u>supra.</u>

Respondent concedes, under section 7491(c), that he bears the burden of production of coming forward with sufficient evidence that the additions to tax are appropriate. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001); cf. <u>Joye v.</u>

Commissioner, supra (where we accepted such a concession without deciding whether section 7491(c) applies in a section 6330 proceeding). On the record before us, we find respondent has met the burden of production by coming forward with sufficient evidence indicating that it is appropriate to impose on petitioners those additions to tax. Petitioners bear the burden of proving "reasonable cause" under section 6651(a). See Higbee v. Commissioner, supra; Joye v. Commissioner, supra.

2. Jurisdiction in the Section 6330 Cases[5]

The Court has jurisdiction to review lien and levy determinations under section 6330 if we generally have jurisdiction over the underlying tax liability. Sec. 6330(d)(1)(A); Van Es v. Commissioner, 115 T.C. 324, 327 (2000); Moore v. Commissioner, 114 T.C. 171, 175 (2000). The Court generally has jurisdiction over income, gift, and estate tax cases for purposes of section 6330(d)(1)(A) because the Court has deficiency jurisdiction over such cases. See secs. 6211(a), 6213(a), 6214(a); Downing v. Commissioner, supra at 26-27; Landry v. Commissioner, 116 T.C. 60, 62 (2001); Katz v. Commissioner, 115 T.C. 329, 339 (2000); Van Es v. Commissioner, supra at 328; Goza v. Commissioner, supra at 182. Just as we have jurisdiction

_____

[5]Neither party contends we lack jurisdiction. However, the Court may consider sua sponte whether it has jurisdiction. Moorhous v. Commissioner, 116 T.C. 263, 272 (2001); Neely v. Commissioner, 115 T.C. 287, 290 (2000).

to decide income, gift, and estate tax cases, we generally have jurisdiction over additions to tax for failure to pay those taxes for purposes of section 6330(d)(1)(A).  See sec. 6214(a); Downing v. Commissioner, supra.

Respondent assessed the underpayment of income tax (which has since been paid) shown on petitioners' 1997 return, as well as the additions to tax under sections 6654(a) and 6651(a)(1) and (2) with respect to the delays in payment of the tax.  We have jurisdiction to review respondent's determinations under section 6330 with respect to petitioners' liability for the additions to tax.

3.  Extensions of Time To File and Pay

Although MSC originally claimed never to have received a Form 4868 from petitioners for 1997, respondent conceded in the notice of deficiency that petitioners did file a Form 4868, and that the IRS approved petitioners' request for an additional extension of time to file their return by October 15, 1998. Respondent did not approve petitioners' request for an extension of time to pay their tax liability.

The news release stated that most tax returns and payments "normally" due on October 15, 1998, from taxpayers residing in Alabama counties affected by Hurricane Georges would not be due until November 16, 1998.  Respondent claims the news release did not apply to petitioners because their 1997 tax liability and

return were not "normally" due on October 15, 1998, but instead on April 15, 1998. However, respondent concedes that the news release may have confused petitioners and for that reason concedes petitioners have reasonable cause under section 6651(a)(1) and (2) for failing to file and pay for the period October 15 to November 16, 1998.

Respondent assessed the section 6651(a)(1) addition to tax for late filing for the period November 17 through December 21, 1998. Respondent did not assess the section 6651(a)(2) addition to tax for late payment from October 15 to November 16, 1998; instead, respondent assessed the late payment addition for the period April 16 through October 15, 1998, and the period November 17, 1998, to the date of payment by petitioners.

4. Late Payment of Tax

a. Failure To Pay Estimated Tax

Petitioners first failed to satisfy their tax obligations by failing to pay any 1997 estimated tax as required by section 6654(a). Petitioners argue in their brief, without explanation, that respondent should have exercised his authority to waive the section 6654(a) addition to tax because this is a case where, by reason of a casualty or disaster, the imposition of that addition to tax would be against equity and good conscience. See sec. 6654(e)(3)(A).

- 17 -

Petitioners conceded the issue of liability under section 6654(a) because they did not raise the issue in their petition. See Rule 331(b)(4); Goza v. Commissioner, 114 T.C. at 183.

Even if petitioners had properly raised this issue in their petition, we would hold it would not be inequitable or unconscionable to impose the estimated tax addition on them. Petitioners did not provide any reason for their failure to pay estimated taxes. Rather than paying estimated taxes, petitioners used $989,158 of petitioner's law practice net profit to pay for construction of their house in Escambia County. Petitioners invested another portion of the law practice net profit in timberland, a highly illiquid investment. Having earned a net profit from petitioner's law practice that was more than four times the amount of the tax liability shown on their return, petitioners had more than enough money to pay estimated taxes and still have funds left over for investments and personal outlays. Moreover, petitioners did not establish any causal link between the natural disasters and failure to pay estimated tax, such as damage or loss of their business records that adversely affected their ability to estimate their tax liability.

b. Failure To Pay Tax With the Request for Automatic 4-Month Extension

Petitioners did not pay any tax, either when they filed their Form 4868 on April 15, 1998, or when they requested a

further extension on August 14, 1998.  The due date for payment
of petitioners' 1997 Federal income tax was April 15, 1998, the
original due date for filing their 1997 return.  See sec.
6151(a).  For failure to pay taxes shown on a return on or before
the due date for payment (determined with regard to any extension
of time for payment), there shall be added 0.5 percent of the
amount of such tax if the failure is for not more than 1 month,
with an additional 0.5 percent for each additional month or
fraction thereof during which such failure continues, not
exceeding 25 percent in the aggregate.  Sec. 6651(a)(2).

In their April 15, 1998, letter, petitioners characterize
their filing of Form 4868 as an extension of time to file and "to
pay the tax due".  The granting by the IRS of an automatic
extension of time to file a return does not operate to extend the
time for payment of any tax shown due on the return.  See sec.
1.6081-4(b), Income Tax Regs.

Petitioners did not properly file a separate request for an
extension of time to pay their taxes, which must be made on Form
1127, Application for Extension of Time for Payment of Tax.  Nor
did they pay their tax liability when they filed their Form 4868.
As a result, petitioners' liability for the section 6651(a)(2)
addition to tax began to accrue on April 16, 1998.

c.  Failure To Pay Tax Shown on 1997 Return

Petitioners did not complete making payments of the tax liability shown on their 1997 return until November 24, 1999, approximately 11 months after they had filed their return late.

The section 6651(a)(2) addition to tax for failure to pay on time does not apply if the taxpayer can demonstrate that the failure is due to "reasonable cause" and not willful neglect.

Petitioners may demonstrate reasonable cause for failure to pay taxes by showing they exercised ordinary business care and prudence in providing for payment of their tax liability and were nevertheless either unable to pay the tax or would suffer an undue hardship (as described in section 1.6161-1(b), Income Tax Regs.) if they paid on the due date.  Sec. 301.6651-1(c), Proced. & Admin. Regs.  Section 1.6161-1(b), Income Tax Regs., defines "undue hardship" as:

> more than an inconvenience to the taxpayer.  It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer from making payment on the due date of the amount with respect to which the extension is desired.  If a market exists, the sale of property at the current market price is not ordinarily considered as resulting in an undue hardship.

Penalties or additions can be avoided if reasonable efforts were made to conserve funds in marketable form to provide for the expected tax liability, but not if "lavish" and excessive living expenses deplete the taxpayer's funds.  Sec. 301.6651-1(c)(1),

Proced. & Admin Regs.  A taxpayer who has invested funds in illiquid or speculative assets has not exercised ordinary business care and prudence unless, at the time of the investment, (1) the remainder of his assets and estimated income will be sufficient to pay the tax, or (2) it reasonably can be foreseen that the investment can be used to realize sufficient funds to satisfy the tax liability.  Id.

Petitioners argue they had reasonable cause for failing to pay on time because they did not have the financial ability to pay the taxes on time.  We reject petitioners' argument.

The 1997 net profit from petitioner's law practice was more than four times the tax liability shown on petitioners' return. Petitioners had much more than enough money in 1997 to pay their tax liability when it was going to fall due on April 15, 1998.

Petitioners did not invest enough of the 1997 law practice net profit in marketable form such as CDs or a savings account to preserve the liquidity needed to pay the tax liability on time. Any hardship petitioners would have encountered from a forced sale of their property would have been of their own making because they used most of the law practice net profit to pay for the Atmore residence, to invest in illiquid timberland, and to more than triple their previous 3 years' charitable contributions.  They did all this over a period when they could have instead estimated the order of magnitude of their 1997 tax

liability and made arrangements to pay their approximate 1997 tax liability when it fell due.

Petitioners argue that petitioner's law practice net profits in later years were not high enough to pay their unusually high tax liability for 1997.  This argument is a nonstarter. Petitioners should have set aside in liquid form sufficient proceeds of their high income for 1997 to enable them to use those proceeds to pay the tax for that year.

In failing to provide for payment of their tax liability, petitioners did not exercise ordinary care and prudence; they did not show they would have suffered an undue hardship if they paid on the due date because they prevented themselves from doing so. Petitioners did not have reasonable cause for failing to pay their 1997 income tax timely.  Petitioners are liable for the addition to tax under section 6651(a)(2) in the section 6330 cases for the period April 15 to October 15, 1998, and November 17, 1998, to the date or dates of payment up to the maximum statutory amount.

5.  Late Filing of 1997 Return

a.  Section 6651(a)(1) Addition to Tax in the Section 6330 Cases

For failure to file a Federal income tax return by its due date, including valid extensions, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1

month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. Sec. 6651(a)(1). The section 6651(a)(1) addition to tax is reduced by the amount of the section 6651(a)(2) addition for any month (or fraction thereof) to which an addition to tax under section 6651(a)(1) and (2) applies. Sec. 6651(c)(1). In order to avoid the section 6651(a)(1) addition to tax, petitioners must show both reasonable cause and a lack of willful neglect. Sec. 6651(a(1); United States v. Boyle, 469 U.S. 241 (1985). Their failure to file is due to reasonable cause if petitioners exercised ordinary business care and prudence and were, nevertheless, unable to file their return within the time prescribed by law. United States v. Boyle, supra at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Respondent assessed the section 6651(a)(1) addition to tax for the period November 17 through December 21, 1998. Petitioners make several arguments that they had reasonable cause for late filing of their 1997 return. We reject them all.

First, petitioners argue casualties to their home and office, including power outages and flooded roads, adversely affected their ability to file. A taxpayer's selective inability to perform his or her tax obligations, while performing his regular business and personal activities, does not excuse failure

to file.  See Watts v. Commissioner, T.C. Memo. 1999-416;
Kemmerer v. Commissioner, T.C. Memo. 1993-394; Bear v.
Commissioner, T.C. Memo. 1992-690, affd. without published
opinion 19 F.3d 26 (9th Cir. 1994).  The natural disasters did
not preclude petitioner from having time to work in his law
practice 12 hours per day, 6 days per week throughout 1997 and
1998, to engage in real estate transactions in 1998, and to
travel to visit the timberland several times in 1998.  Moreover,
petitioners did not establish any causal link between the natural
disasters and the late filing, such as damage or loss of their
business records that precluded them from filing on time.
Respondent conceded petitioners an extension of time to file
until November 16, 1998.  Petitioners had more than enough time
to complete and file their 1997 return no later than November 16,
1998.

Second, replacement of petitioners' accountant is not
"reasonable cause" to excuse their late filing.  See United
States v. Boyle, supra at 252.

Third, petitioners argue their 1997 return was filed timely
under section 165(i), which provides that any loss attributable
to a Presidentially declared natural disaster may, at the
election of the taxpayer, be taken into account for the taxable
year immediately preceding the taxable year in which the disaster
occurred.  If such an election is made, the casualty resulting in

the loss is treated as having occurred in the taxable year for which the deduction is claimed.  Sec. 165(i)(2).

Petitioners had until the due date of their 1998 return, April 15, 1999, to elect to take into account 1998 casualty losses from Hurricane Georges on their 1997 return.  Sec. 165(i); sec. 1.165-11(e), Income Tax Regs.  Section 165(i) allows petitioners either to amend their 1997 return or claim a refund of taxes from their 1997 tax year.  Neither section 165(i) nor any other Code provision allows petitioners to file their 1997 return later than April 15, 1998, the due date.

Finally, petitioners argue that section 7508A, which authorizes the IRS to postpone any deadline under Federal tax laws for taxpayers affected by a Presidentially declared disaster, creates a presumption of reasonable cause under section 6651(a)(1) and (2).  Section 7508A provides no general presumption of reasonable cause for late filing or late payment.

Petitioners did not have reasonable cause for failing to file their 1997 return by November 16, 1998.  Petitioners are liable for the addition to tax under section 6651(a)(1) in the section 6330 cases for the period November 17 through December 21, 1998, up to the maximum statutory amount.  Respondent's assessment shall be reduced by the amount of the section 6651(a)(2) addition for any month (or fraction thereof) to which an addition to tax under section 6651(a)(1) and (2) applies.

b.  Section 6651(a)(1) Addition to Tax in the
Deficiency Case

For the reasons described <u>supra</u> (Issue 1.B.5.a.), with respect to the section 6651(a)(1) late filing addition to tax in the section 6330 cases, petitioners are liable for the addition to tax under section 6651(a)(1) in the deficiency case up to the maximum statutory amount.

6.  No Abuse of Discretion in Sustaining Levy

Petitioners argue the Appeals officer abused his discretion in sustaining respondent's levy because:  (1) The Appeals officer did not consider that the collection of tax would not be in jeopardy, given petitioners' ownership of substantial assets and income-earning potential with which to pay their tax liabilities; (2) IRS agents repeatedly declined to inspect petitioners' real property damaged by natural disasters in 1997 and 1998; and (3) respondent never replied to petitioners' good-faith efforts to negotiate reasonable collection alternatives, including petitioners' offer in compromise.

Respondent filed a motion to strike portions of petitioners' reply brief relating to the issue of abuse of discretion because that issue was not raised in the petition.

Petitioners conceded the issue of abuse of discretion because the petitions filed with the Court do not assert (nor is there any basis in the administrative record for the Court to conclude) that the Appeals officer abused his discretion with

respect to the intended collection action or possible alternative means of collection.  See Rule 331(b)(4); Goza v. Commissioner, 114 T.C. at 183.  Even if petitioners had not conceded this issue, petitioners' factual allegations and arguments would not establish that the Appeals officer abused his discretion in sustaining respondent's levy.

We shall not consider an August 8, 2002, letter (the settlement letter) attached to petitioners' reply brief in which petitioners offered to settle all tax, interest, and penalties for $100,000 to be paid within 90 days of acceptance of their offer; that letter was never properly introduced into evidence, as required by Rule 143.  See also Kronish v. Commissioner, 90 T.C. 684, 695-696 (1988).

Even if the settlement letter had been properly introduced, we would not consider it a valid offer in compromise.  Taxpayers who wish to propose an offer in compromise must submit a Form 656, Offer in Compromise, which requests financial information from the taxpayer so that the IRS can determine whether the offer should be accepted.  See sec. 7122(c); see also 2 Administration, Internal Revenue Manual (CCH), sec. 5.8.1.3(a).

Petitioners' offer was invalid because they did not submit a Form 656 or otherwise describe their income, assets, and other financial information required by Form 656 in order for respondent to evaluate whether the offer should be accepted.

Instead petitioners attempted to settle their entire liability for $100,000 without providing any facts to support their claimed inability to pay the full tax liability, without any factual assertions or legal argument that they were not liable for the full tax liability, and without any legal basis for respondent's acceptance of such an offer. A decision by respondent's agents not to process petitioners' offer in compromise would have been a reasonable exercise of respondent's discretion.

In the absence of a justiciable claim for relief in the petitions for review of respondent's proposed collection action, we grant respondent's motion to strike portions of petitioners' reply brief on the issue of abuse of discretion.

Issue 2.  Abatement of Interest

FINDINGS OF FACT

In the section 6330 cases, respondent assessed interest of $21,984.63 accrued on the tax liability reported on petitioners' 1997 return. In the Linda Godwin notice, respondent stated that abatement of interest is not granted. The amount of interest is not contested.

OPINION

Petitioners argue that interest on late-paid tax reported on their 1997 return should be abated because they resided in a Presidentially declared disaster area in 1997 and 1998.

Section 6404(h)(1), as amended (current section 6404(h)(1)),[6] provides:

> The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

See also Woodral v. Commissioner, 112 T.C. 19, 22-23 (1999).

We lack jurisdiction over petitioners' interest abatement request. The older version of section 6404(h)(1) (old section 6404(h)(1)),[7] provided:

> If the Secretary extends for any period the time for filing income tax returns under section 6081 and the time for paying income tax with respect to such returns under section 6161 for any taxpayer located in a Presidentially declared disaster area, the Secretary shall abate for such period the assessment of any interest prescribed under section 6601 on such income tax.

The old section 6404(h)(1) applied to disasters declared after December 31, 1997, with respect to tax years beginning after December 31, 1997. See Internal Revenue Service Restructuring

---

[6]The Victims of Terrorism Tax Relief Act of 2001 (VTTRA), Pub. L. 107-134, sec. 112(d)(1)(B), 115 Stat. 2435 (2002), amended sec. 6404 by deleting subsec. (h) and redesignating subsec. (i) as subsec. (h).

[7]Sec. 6404(h) dealing with abatement of interest for Presidentially declared disasters was deleted by VTTRA sec. 112(d)(1)(A), 115 Stat. 2434. The interest abatement provision is now included in sec. 7508A.

and Reform Act of 1998, Pub. L. 105-206, sec. 3309(b), 112 Stat. 745.

The old section 6404(h)(1) was not in effect in 1997 when the President declared Hurricane Danny a disaster. Because petitioners elected to claim losses from Hurricane Georges on their 1997 return, the casualty from Hurricane Georges is treated as having occurred in 1997. See sec. 165(i)(2). Although Hurricane Georges was a Presidentially declared disaster in 1998, the old section 6404(h)(1) does not apply to petitioners' 1997 tax year at issue, which began before January 1, 1998. The current section 6404(h)(1) grants the Court jurisdiction to review the Commissioner's failure to abate interest only under subsections of section 6404. Because the old section 6404(h)(1) was not in effect during petitioners' tax year at issue, the Court lacks jurisdiction to review petitioners' claim for abatement of interest.

We are unable to grant petitioners any abatement of interest on their 1997 tax liability.

Issue 3. Casualty Losses

Background

On Schedule A, Itemized Deductions, of their 1997 return, petitioners deducted total casualty losses of $526,833 assertedly

caused by Hurricane Danny,[8] the 1997 earthquakes, and Hurricane Georges.[9]  Respondent examined petitioners' 1997 return and made adjustments.  Casualty losses to the bay house are not at issue.

The casualty losses claimed by petitioners and respondent's adjustments are as follows:

| Natural Disaster | Date | Property Affected | Claimed Loss | Allowed by Respondent |
|---|---|---|---|---|
| Hurricane Danny | 7/19/97 | Bay house | $22,943 | - 0 - |
| Earthquake tremors | 5/3/97 10/24/97 | Atmore residence | 300,000 | - 0 - |
| Hurricane Georges | 9/30/98 | Atmore residence | 211,504 | - 0 - |
| | | Bay house | 50,000 | $80,000 |
| | | Beach lot | 92,000 | - 0 - |
| Total | | | 676,447 | 80,000 |
| Total after $100 limit for each casualty | | | 676,147 | 79,900 |
| Total after 10 percent adjusted gross income (AGI) limit (AGI = $1,493,138) | | | 526,833 | - 0 - |

---

[8]On their 1997 return, petitioners claimed a casualty loss of $22,943 for damages to their bay house from Hurricane Danny. Respondent determined petitioners failed to establish any loss in excess of their insurance reimbursement.  Petitioners conceded respondent's adjustment in their opening statement at trial.

[9]On their 1997 return, petitioners claimed a loss of $50,000 for damages caused by Hurricane Georges to a wharf and bulkhead at their bay house.  In the notice of deficiency, respondent determined petitioners were entitled to a loss of $80,000 for damages to their bay house.  Petitioners do not contest this determination.  Petitioners are not entitled to deduct the casualty loss of $80,000 because it does not exceed $149,314, 10 percent of petitioners' 1997 adjusted gross income, as provided by sec. 165(h).

FINDINGS OF FACT

1.  Atmore Residence

Both 1997 earthquakes occurred in Escambia County, Alabama; the May 3, 1997, earthquake registered 3.1 on the Richter scale, and the October 24, 1997, earthquake registered 4.9 on the Richter scale.  During the period September 21-30, 1998, Hurricane Georges caused damage in the Caribbean region and across the southern Gulf States of the United States and produced 13.5 inches of rainfall and wind gusts up to 85 miles per hour in Alabama.

On their 1997 return, petitioners claimed a casualty loss of $300,000 for reduction in the fair market value of the Atmore residence.  Petitioners claim the 1997 earthquakes caused a crack or cracks on the ground floor on opposite sides of the house that are less than one-thirty-second of an inch in width; the crack or cracks are in the limestone tile floor of the family room on the west side of the house and the granite tile floor of the master bathroom on the east side of the house.[10]  Petitioners have never inspected the floors underneath the carpets in rooms between the family room and master bathroom to determine whether the crack or cracks run continuously through the ground floor of the Atmore

_____

[10]It is not clear from the record whether there is one continuous crack running through the ground floor of the Atmore residence or more than one crack in different rooms of the house.

residence.  Photographs of the crack or cracks on the floors in the family room and the master bathroom are in evidence.

The Atmore residence was under construction in 1997.  The Atmore residence was insured for earthquake damage from January 15, 1998, to January 15, 1999, but was not insured for such damage during the period of construction in 1997.

The foundation of the Atmore residence had been completed and was covered with sawdust and construction materials so that any crack or damage to the foundation would not have been noticeable to petitioners if they had made an inspection immediately after the May earthquake.  The Atmore residence was complete as of the October earthquake.  Petitioners observed the crack or cracks after moving into the Atmore residence in early 1998.  Petitioner made his own estimate of the decrease in fair market value of the Atmore residence after the 1997 earthquakes. The Court held the record open for 30 days following the trial to allow petitioner to introduce into evidence an Escambia County Tax Assessor's appraisal (the assessor's appraisal) in petitioners' possession that petitioner claimed was consistent with his estimate of the reduction in the fair market value of the Atmore residence.  Petitioners did not introduce the assessor's appraisal into evidence.

Petitioners made a timely election under section 165(i) to make a claim on their 1997 return for a casualty loss in value of

the Atmore residence as a result of Hurricane Georges.  On their 1997 return, petitioners claimed a casualty loss of $211,504 for reduction in the fair market value of the Atmore residence as a result of water damage to the exterior brick and the wooden frame in the gables of the Atmore residence (the brick damage) caused by Hurricane Georges.  Petitioners also claimed a loss in the architectural value of the Atmore residence as a result of having to cover the exterior brick with vinyl siding in order to prevent future water damage to the exterior brick.  Although there is no evidence in the record of the exact cost of the vinyl siding, according to petitioner, the cost was "not very high".  Photographs of the vinyl siding and the brick damage are in evidence.  Petitioners reported an insurance reimbursement of $2,654 for damages as a result of Hurricane Georges.  Petitioner was not sure whether the insurance company paid any amount towards repairing the brick damage or installing the vinyl siding.

2.  Beach Lot

Petitioners made a timely election under section 165(i) on their 1997 return to claim a casualty loss from beach erosion of their undeveloped beach lot in Baldwin County, Alabama, on the Gulf of Mexico (the beach lot) as a result of Hurricane Georges.  Petitioners claimed a loss of the full amount of their $92,000 cost basis in the beach lot.  Photographs of the beach and the

claimed erosion are in evidence. Respondent disallowed petitioners' claimed loss in full.

Removal of sand on petitioners' beach lot revealed the ribs of a wrecked vessel on the property several yards from the water's edge (the wreck). The wreck was covered by sand before Hurricane Georges and was almost fully visible for a period of time after Hurricane Georges. The remains of the wreck included rusted debris.

Petitioner did not recover sand from areas where it was deposited by the storm as other property owners in the vicinity had done and as he was permitted to do. The wreck has since been covered by sand and the beach replenished by ocean tides and a beach replenishment program of the City of Gulf Shores, Alabama.

Baldwin County changed the coastal construction setback line after Hurricane Georges, thereby limiting the area on the beach lot available for future construction of a new beach house.

OPINION

1. Burden of Proof

Petitioners generally bear the burden of proving their entitlement to deductions for casualty losses. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 7491(a), which applies to examinations commenced after July 22, 1998, places the burden of proof on the Commissioner with regard to certain factual issues. The

examination in the instant case commenced after July 22, 1998; accordingly, we consider whether respondent bears the burden of proof under section 7491(a).

Section 7491(a)(1) provides that if, in any court proceeding, the taxpayer introduces credible evidence with respect to factual issues relevant to ascertaining the taxpayer's liability for a tax, the Commissioner will have the burden of proof with respect to such factual issues. The taxpayer must also comply with substantiation and record-keeping requirements and must cooperate with reasonable requests by the Commissioner for "witnesses, information, documents, meetings, and interviews". See sec. 7491(a)(2)(A) and (B).

The statute does not expressly provide what constitutes credible evidence. The conference committee's report states:

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). A taxpayer has not produced credible evidence for these purposes if the taxpayer merely makes implausible factual assertions, frivolous claims, or tax protestor-type arguments. The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. If after evidence from both sides, the court believes that the evidence is equally balanced, the court shall find that the Secretary has not sustained his burden of proof. [H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.]

See also Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Petitioners failed to introduce sufficiently credible evidence as to the requisite elements of a casualty loss deduction to shift the burden of proof to respondent.

## 2. Applicable Law

Section 165(a) and (c)(3) allows an individual a deduction for loss of property not connected with a trade or business or a transaction entered into for profit if the loss arises from fire, storm, shipwreck, or other casualty and was not compensated for by insurance or otherwise. "Other casualty" is defined as a loss proximately caused by a sudden, unexpected, or unusual event, excluding the progressive deterioration of property through a steadily operating cause or by normal depreciation. Maher v. Commissioner, 680 F.2d 91, 92 (11th Cir. 1982), affg. 76 T.C. 593 (1981); Coleman v. Commissioner, 76 T.C. 580, 589 (1981). There must be a causal connection between the alleged casualty and the loss claimed by the taxpayer. Kemper v. Commissioner, 30 T.C. 546, 549-50 (1958), affd. 269 F.2d 184 (8th Cir. 1959). The casualty loss must be permanent and not merely temporary damage or interruption in the use of the property. Bidelspacher v. Commissioner, T.C. Memo. 1980-538, affd. without published opinion 681 F.2d 804 (3d Cir. 1982).

A casualty loss not connected with a trade or business or a transaction entered into for profit is deductible under section

165(h) only to the extent (1) the loss exceeds $100, and (2) the net casualty loss exceeds 10 percent of the AGI of the taxpayer.

The amount of the casualty loss from a partial destruction of property is the lesser of the taxpayer's adjusted basis of the property or the difference in the property's fair market value immediately before and after the casualty. Sec. 1.165-7(b)(1), Income Tax Regs. The amount of the loss is reduced by any insurance recovery and salvage value. Sec. 165(a); sec. 1.165-1(c)(4), Income Tax Regs. To establish the amount of the loss, the relevant fair market values of the property "shall generally be ascertained by competent appraisal" conducted in a manner to ensure that any casualty loss deduction "be limited to the actual loss resulting from damage to the property." Sec. 1.165-7(a)(2)(i), Income Tax Regs. As an alternative, the taxpayer may use the cost of repairs to prove the casualty loss (the cost of repairs method). See sec. 1.165-7(a)(2)(ii), Income Tax Regs.

3. Cause of Damages

Petitioners presented credible evidence that Hurricane Georges damaged the beach lot by causing loss of sand that persisted until the sand was replenished by ocean tides and the beach replenishment program of the City of Gulf Shores, Alabama. Beach erosion from Hurricane Georges revealed the remains of the wreck. Petitioners claim the visibility of the wreck and

destruction of beautiful, picturesque sand dunes with sea oats adversely affected the beauty of the beach and hampered the enjoyment of leisure and recreation activities on the beach. Respondent submitted no evidence to refute these claims.

However, we reject petitioners' casualty loss claim for Baldwin County's change of the coastal construction setback line after Hurricane Georges, which limited the area of the beach lot available for construction of a new beach house. Any reduction in value of the beach lot owing to the Baldwin County government restriction was not a casualty loss because the proximate cause of the loss was the government restriction rather than Hurricane Georges itself. See Kemper v. Commissioner, supra. Moreover, the government restriction does not constitute a casualty as defined under section 165(c)(3) or "other casualty" as defined in Maher v. Commissioner, supra, and Coleman v. Commissioner, supra.

With respect to the Atmore residence, unlike the beach lot, petitioners failed to introduce sufficiently credible evidence that the 1997 earthquakes or Hurricane Georges caused damages to the Atmore residence that were not covered by insurance.

Although petitioners introduced photographic evidence to establish the crack or cracks in the floors of two rooms on the ground floor of the house, petitioners did not present any expert opinion or other independent evidence that the seismic activity was the cause of the crack or cracks in the floors. Petitioners

rely on petitioner's self-serving assertion that there "is no other way that those cracks could have occurred other than through those two earthquakes".  Petitioner was not trained or qualified to determine whether an earthquake was capable of causing the crack or cracks.  Even if the crack or cracks were caused by the 1997 earthquakes, there is no evidence in the record, besides petitioner's self-serving assertion, to support petitioners' contention the 1997 earthquakes damaged the foundation of the Atmore residence or that the crack or cracks on the ground floor were caused by damage to the foundation.

In Abrams v. Commissioner, T.C. Memo. 1981-231, we found a casualty loss as a result of cracks in the taxpayer's medical office building connected with earthquakes and "seismic activity".  Although we did not conclude the cracks were necessarily caused directly by an "earthquake", we estimated a casualty loss under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), because the abrupt manifestation of the cracks, when added to the considerable seismic activity in the area around the time they appeared, indicated they resulted from a sudden, unexpected natural force.

Respondent argues the case at hand is distinguishable from Abrams because the evidence does not establish that the crack or cracks in the floors of the Atmore residence necessarily resulted from a sudden, unexpected natural force rather than some other

cause unrelated to a casualty, such as a structural flaw in the Atmore residence. We agree with respondent.

First, unlike the record in Abrams, the record here does not establish the crack or cracks in the tile floors of the Atmore residence occurred in proximate time to either of the 1997 earthquakes. Even though the May earthquake occurred less than 3 weeks after commencement of construction of the Atmore residence, the foundation had been completed and was covered with sawdust and construction materials so that any crack or damage to the foundation would not have been noticeable immediately after the May earthquake. There was no evidence the crack or cracks occurred in proximate time to the October earthquake because petitioners did not notice the crack or cracks until after they moved into the house in early 1998. Second, unlike the taxpayers in Abrams, petitioners introduced no expert testimony or independent evidence to prove the earthquakes caused the crack or cracks. Third, the two 1997 earthquakes were not nearly as powerful on the Richter scale and did not occur in substantial numbers as did the earthquakes in Abrams. Fourth, the crack or cracks in the Atmore residence are nowhere near as extensive as those described in Abrams.

Although photographs introduced by petitioners establish the damage to the exterior brick as a result of Hurricane Georges, petitioner was not sure whether the insurance company paid any

amount towards repairing the brick damage or installing the vinyl siding.  Petitioners failed to introduce any invoices or other documents to establish the amount of loss covered by insurance.  Petitioners' failure to introduce such documents, which were in all likelihood in their possession and which, if accurate, would be favorable to them, gives rise to the presumption that if produced, the insurance invoices would be unfavorable.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

4.  Losses in Value, If Any, Caused by Casualties

Petitioners failed to introduce sufficiently credible evidence of the amount of casualty losses, if any, to the Atmore residence or the beach lot as a result of the natural disasters.

We will not apply the cost of repairs method to any of petitioners' claimed casualty losses because petitioners introduced no evidence of the cost of repairs and did not claim any damages using the cost of repairs method.[11]

The amount of the casualty loss from a partial destruction of property is the lesser of the taxpayers' adjusted basis of their property or the difference in their property's fair market

---

[11]Even if petitioners had introduced evidence of the cost of installing vinyl siding, petitioners' precautionary measure of covering the exterior brick with vinyl siding to avoid a possible casualty at a future date is not deductible as a casualty loss. See Austin v. Commissioner, 74 T.C. 1334, 1337 (1980).

value immediately before and after the casualty.  Sec.
1.165-7(b)(1), Income Tax Regs.

Petitioners' only evidence in support of the amounts of the
claimed losses was petitioners' self-serving estimates of the
decrease in fair market values of their properties.  Petitioners
introduced no documentary evidence or expert testimony, such as
an appraisal from a competent professional, to ascertain the
difference in fair market values of the Atmore residence or beach
lot before and after the natural disasters.  See sec. 1.165-
7(a)(2)(i), Income Tax Regs.

Petitioners failed to introduce into evidence the assessor's
appraisal of the Atmore residence that they claim was consistent
with their estimate of the decrease in the fair market value of
the Atmore residence after the 1997 earthquakes, even though the
Court held the record open for 30 days to allow them to do so.
Petitioners' failure to introduce the assessor's appraisal within
their possession and which, if true, would be favorable to them,
gives rise to the presumption that if produced, the assessor's
appraisal would be unfavorable.  See Wichita Terminal Elevator
Co. v. Commissioner, supra.

Although an owner of property is competent to testify
regarding its value, the weight of such testimony is affected by
the owner's knowledge of circumstances which affect value.  Neff
v. Kehoe, 708 F.2d 639, 644 (11th Cir. 1983); J & H Auto Trim Co.

v. Bellefonte Ins. Co., 677 F.2d 1365, 1369 (11th Cir. 1982). Inasmuch as the owner is an interested witness, the task of the trier of fact is to evaluate the credibility of the owner's testimony. Neff v. Kehoe, supra; J & H Auto Trim Co. v. Bellefonte Ins. Co., supra. Petitioner's testimony lacks credibility because he was not trained or qualified to determine the amount of the decrease in value of his home or beach lot as a result of the damage alleged.

Tank v. Commissioner, 270 F.2d 477 (6th Cir. 1959), revg. 29 T.C. 677 (1958), cited by petitioners, is distinguishable from the case at hand. There the Court of Appeals for the Sixth Circuit reversed a casualty loss disallowance by this Court and allowed the loss, relying not only on the taxpayers' own testimony, but also on evidence of cause of the loss by a licensed architect and evidence of the loss of value by a real estate appraiser.

Even assuming, on the basis of petitioner's status as a leading citizen of Atmore with knowledge of local conditions, that he was an expert on local property values, we have broad discretion to evaluate "'the overall cogency of each expert's analysis.'" Sammons v. Commissioner, 838 F.2d 330, 334 (9th Cir. 1988) (quoting Ebben v. Commissioner, 783 F.2d 906, 909 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1983-200), affg. in part and revg. in part on another ground T.C. Memo.

1986-318; Estate of True v. Commissioner, T.C. Memo. 2001-167. Although expert testimony usually helps the Court determine values, sometimes it does not, particularly when the expert is merely an advocate for the position argued by one of the parties. See, e.g., Estate of Halas v. Commissioner, 94 T.C. 570, 577 (1990); Laureys v. Commissioner, 92 T.C. 101, 129 (1989); Estate of True v. Commissioner, supra. We have rejected expert opinions based on conclusions that are unexplained or contrary to the evidence. See Knight v. Commissioner, 115 T.C. 506 (2000); Rose v. Commissioner, 88 T.C. 386, 401 (1987), affd. 868 F.2d 851 (6th Cir. 1989). Testimony that is inherently improbable or manifestly unreasonable may be rejected, even though no contradictory evidence is offered. Quock Ting v. United States, 140 U.S. 417 (1891).

Petitioners claim the value of the Atmore residence decreased by more than 30 percent ($300,000 decrease in value of $989,158 house) as a result of the crack or cracks in the tile floors and more than 21 percent ($214,168 decrease in value of $989,158 house) as a result of damage to the exterior brick and the need to install the vinyl siding. Petitioners did not explain the methodology or the factors used to make their valuations. It is improbable that the value of the Atmore residence would drop by more than 30 percent simply because of a crack or cracks in the tile floors with no evidence of damage to

the foundation or by more than 21 percent as a result of damage
to the exterior brick and the need to cover the brick with vinyl
siding.

Because the wreck on the beach lot has now been covered by
sand and the beach replenished by ocean tides and the beach
replenishment program of the City of Gulf Shores, Alabama, the
loss in value of the beach lot from erosion was not permanent and
is not a casualty loss.  See Bidelspacher v. Commissioner, T.C.
Memo. 1980-538.  Moreover, it is improbable the beach lot would
now be worthless as a result of beach erosion that has since been
remedied.

Further, the record contains no evidence, such as reduction
in value of similar houses as a result of similar damage, cost of
repairing similar damage, reduction in value of similar beach
lots as a result of beach erosion, cost of replenishing the lost
sand, etc. upon which we might exercise our judgment to estimate
the amount of the loss or losses in value from the 1997
earthquakes or Hurricane Georges[12] under Cohan v. Commissioner,
39 F.2d 540 (2d Cir. 1930).  See Williams v. United States, 245

_____

[12]We have no confidence whatsoever that any amount of loss
we might estimate on the basis of cost of repairs would equal or
exceed the additional amount--$69,314--needed to reach the 10
percent of AGI threshold provided by sec. 165(h).  See supra
notes 8 and 9 and accompanying text.

F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

We hold that petitioners did not sustain deductible casualty losses to the Atmore residence from the 1997 earthquakes or Hurricane Georges or to the beach lot from Hurricane Georges.

### Conclusions

Petitioners are liable for the section 6654(a) addition to tax in the section 6330 cases, the section 6651(a)(2) addition to tax in the section 6330 cases for the period April 16 through October 15, 1998, and the period November 17, 1998, to the date of payment up to the maximum statutory amount, and the section 6651(a)(1) addition to tax in the section 6330 cases and the deficiency case for the period November 17 through December 21, 1998. Respondent's collection determination is sustained.

Petitioners are not entitled to any abatement of interest with respect to amounts reported on their 1997 return.

Petitioners are not entitled to deduct casualty losses on their 1997 return because the allowable losses they sustained did not reach the deduction threshold provided by section 165(h).

To give effect to the foregoing,

<u>An appropriate order will be issued and decisions will be entered under Rule 155 in docket Nos. 11382-01L and 14817-02L, and decision will be entered under Rule 155 in docket No. 498-02.</u>