T.C. Memo. 2003-316

UNITED STATES TAX COURT

STANLEY R. HARBAUGH AND BONNIE L. HARBAUGH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10591-02.              Filed November 13, 2003.

Stanley R. Harbaugh and Bonnie L. Harbaugh, pro sese.

<u>Frederick J. Lockhart, Jr.</u> and <u>Sara J. Barkley</u>, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  On December 19, 2001, respondent issued a
notice of final determination denying petitioners' claim under
section 6404[1] for abatement of interest on income tax liabilities

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at the time the petition was
(continued...)

for 1993, 1994, and 1995. Petitioners timely filed a petition seeking review of respondent's determination not to abate interest. Initially, we must decide whether petitioners reached an enforceable compromise of their tax liabilities under section 7122. We hold that petitioners did not reach an enforceable compromise under section 7122. The remaining issue for decision is whether respondent's denial of interest abatement with respect to petitioners' income taxes for 1993, 1994, and 1995 was an abuse of discretion under section 6404.[2] For the reasons stated herein, we hold that respondent's refusal to abate the interest on petitioners' income tax liabilities from December 22, 1996 to August 11, 1999, was an abuse of discretion but that in all other respects the failure to allow abatement was not an abuse of discretion.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Longmont, Colorado, at the time the petition was filed. References to petitioner are to Stanley Harbaugh.

---

[1](...continued)
filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners' petition requests review only with respect to the interest accrued since August 1996, on their income tax liabilities for 1993, 1994, and 1995.

Trust Fund Recovery Penalty and Income Tax Deficiencies

On September 3, 1992, respondent filed a Notice of Federal Tax Lien for $9,536.28 against petitioner with respect to a trust fund recovery penalty (the TFRP) under section 6672 for employment tax periods ending September 30, 1989, December 31, 1989, and March 31, 1990.[3]

Petitioners filed their 1993 Federal income tax return on April 15, 1994, showing tax due of $917.15, but remitted no payment with the return. Petitioners filed their 1994 Federal income tax return on July 8, 1996, showing tax due of $1,498, but remitted no payment with the return. Petitioners filed their 1995 Federal income tax return on April 15, 1996, showing tax due of $964, and, again, no payment was remitted with the return.[4]

Installment Agreement

In August 1996, petitioner called the Internal Revenue Service (IRS) to discuss the payment of his existing tax liabilities (the first call). During the first call, petitioner spoke to an employee of the IRS whom he recalls as "Miss Morrison" at one of the IRS's automated collection sites (ACS).

[3] The trust fund recovery penalty (TFRP) was assessed on June 8, 1992, as a result of employment tax liabilities incurred by Northern Colorado Travel while petitioner was its president.

[4] Petitioners also filed a chapter 13 bankruptcy petition on June 24, 1993, which was dismissed on Jan. 13, 1995; they received a debt discharge in a chapter 7 proceeding on Mar. 27, 1996.

Petitioners were unable to pay their tax liabilities in August 1996. Petitioner and the ACS employee agreed during the first call that petitioners would pay $225 per month to the IRS for 36 months, for a total amount paid of $8,100. The agreement between petitioner and the ACS employee was not put in writing. At the end of the first call, petitioner believed that, if he timely made all 36 payments and did not become delinquent with any of his other tax liabilities, his 1993, 1994, and 1995 income tax liabilities and the TFRP would be extinguished, including any interest and penalties thereon.

The first monthly statement reflecting a payment due pursuant to the installment agreement was dated December 11, 1996. The statement showed balances of petitioners' liabilities that were inconsistent with petitioner's belief about what he owed as a result of the first call. Shortly after receiving the statement, petitioner called the IRS in response to this statement and again spoke with the ACS employee, "Miss Morrison" (the second call). Petitioner was told during the second call that the statement was a reminder of his payment due date, and that the old liabilities would be reflected on his statements in case of default. He was also told that at the end of the 36 months the additional amounts would be removed. Petitioners made their December 1996 payment on December 22, 1996. At the time of

trial, respondent had not located the ACS employee with whom petitioner entered into the agreement.

Petitioners made 34 payments of $225, commencing September 23, 1996, until June 23, 1999. The first two payments made by petitioners were credited by respondent to petitioners' 1993 income tax deficiency. The remaining 32 payments were credited to the TFRP. Petitioners received monthly statements from the IRS reflecting both the installment amount currently due ($225) and petitioners' total outstanding liabilities.

Remaining Liabilities

After petitioners' 34th payment was credited in June 1999, petitioners' accounts showed that accrued interest on the TFRP, as well as income taxes and interest thereon, remained due. The interest on the TFRP was secured by the lien. On July 22, 1999, after learning from the IRS the amount necessary to release the lien, petitioners made a payment of $1,345.84, and the lien was released. After the payment on July 22, 1999, petitioners received another monthly statement dated August 11, 1999, and continued to receive statements through March 15, 2000, showing amounts due with respect to their income taxes.

Requests for Abatement

On June 14, 2000, petitioners filed Form 843, Claim for Refund and Request for Abatement, with the IRS, claiming a refund

of $895.84 with respect to the TFRP.[5]  On April 17, 2001, the claim for refund was denied by the IRS.  On April 23, 2001, petitioners filed additional Forms 843 with respect to their income taxes for 1993, 1994, and 1995.  The Forms 843 were treated as requests for abatement of interest on petitioners' income taxes.  On May 3, 2001, respondent denied petitioners' claims for interest abatement for 1993, 1994, and 1995.  On May 30, 2001, petitioners requested review by the IRS Appeals Office of the denial of interest abatement.  On December 19, 2001, the IRS Appeals officer sent a final determination letter denying petitioners' claim for interest abatement for 1993, 1994, and 1995.

OPINION

As a preliminary matter, we must decide whether an agreement to compromise petitioners' liabilities was reached between petitioner and the ACS employee.  If we find that a valid compromise existed, then it appears that petitioners' liabilities should have been extinguished upon their final payment on July 22, 1999.  If we find that no compromise existed, we must decide whether respondent abused his discretion in refusing to abate interest on petitioners' income tax liabilities.

---

[5] The $895.84 represented the portion of the July 22, 1999, payment that exceeded the $450 that petitioners' 35th and 36th installment payments would have totaled.

Compromise of Tax Liabilities

Petitioner contends that the first call resulted in an agreement under which he would be required to pay a total amount that was less than he owed.  We have found as a fact that he believed that after making the payments for 36 months, he would owe nothing more with respect to his tax liabilities.

Respondent contends that an installment agreement, not a compromise, was made during the first call.  Respondent contends that, according to guidelines set forth in the Internal Revenue Manual, amounts that were accrued but unassessed at the time of the first call, such as interest and penalties, would not be covered by the installment payments, and would remain due even after all of the installment payments had been made.

It is well settled that section 7122 and the regulations thereunder provide the exclusive method of effectuating a valid compromise of assessed tax liabilities.  Ringgold v. Commissioner, T.C. Memo. 2003-199; see also Botany Worsted Mills v. United States, 278 U.S. 282, 288-89 (1929); Laurins v. Commissioner, 889 F.2d 910 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265.  After evaluating the requirements of section 7122 and the regulations thereunder, we find that petitioner and the ACS employee did not enter into a binding agreement to compromise petitioners' liabilities.

When the first and second calls were made, a liability could be compromised only if there was doubt as to liability or doubt as to collectibility.[6] Sec. 301.7122-1(a), Proced. & Admin. Regs. Petitioners' liability was not in doubt at the time of the "agreement" because petitioners had filed the tax returns calculating the taxes due and were not contesting the accuracy of the returns. Petitioners have not established that they delivered any financial statements or other evidence of their financial situation to the IRS at the time of the first call indicating doubt as to collectibility. Thus, the evidence does not demonstrate that a valid basis existed for compromising petitioners' tax liabilities.

The regulations also required offers in compromise to be submitted on "forms prescribed by the Internal Revenue Service". Sec. 301.7122-1(d)(1), Proced. & Admin. Regs. An offer is accepted "only when the proponent thereof is so notified in writing." Sec. 301.7122-1(d)(3), Proced. & Admin. Regs.; see also Ringgold v. Commissioner, supra. Petitioners did not submit a written offer in compromise to the IRS. They also do not claim to have received a written acceptance of the purported agreement from the IRS. Without satisfaction of these procedural elements, we cannot find that a valid compromise was made.

---

[6] In response to the enactment in 1998 of sec. 7122(c), the regulations were changed to add a third basis for compromise.

Finally, the ACS employee did not have the authority to compromise petitioners' liabilities. Deleg. Order No. 11 (Rev. 24), 1994-2 C.B. 550. It is the responsibility of the person entering into an agreement with an employee of the IRS to ascertain that the employee stays within the bounds of her authority. Boulez v. Commissioner, 810 F.2d 209, 218 (D.C. Cir. 1987), affg. 76 T.C. 209 (1981). A compromise agreement made by an employee lacking the requisite authority is not binding on the Commissioner. Id.

We therefore conclude that petitioner and the ACS employee did not reach a valid agreement to compromise petitioners' tax liabilities during the first or second call.

Abatement of Interest

We now decide whether respondent abused his discretion by refusing to abate interest on petitioners' liabilities.

Section 6404(e)(1)(B) provides that the Commissioner may abate all or any part of an assessment of interest on any payment of certain taxes if an error or delay in such payment is attributable to an officer or employee of the IRS being "erroneous or dilatory in performing a ministerial act".[7] A

_____

[7] Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error or delay in performing a ministerial or "managerial" act. Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a), 110 Stat. 1457 (1996). That standard applies only to tax years beginning after July 30, 1996, and thus does not apply in the present case. Taxpayer Bill of Rights 2,
(continued...)

ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. Lee v. Commissioner, 113 T.C. 145, 150 (1999); see also sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). Abatement is available under section 6404(e) only for periods after the IRS has contacted the taxpayer in writing with respect to the payment. Sec. 6404(e)(1).

This Court has jurisdiction to order an abatement of interest only when the Commissioner has abused his discretion in denying a taxpayer's request to abate interest. Sec. 6404(h). In order for a taxpayer to show an abuse of discretion, he must prove that the Commissioner exercised this discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999). In deciding whether petitioners are entitled to abatement, we will look at each relevant time period.

August to December 22, 1996

During the first call in August 1996, an installment agreement was established. Because petitioners were unable to

---

[7](...continued)
sec. 301(c), 110 Stat. 1457.

pay the tax liabilities in August 1996, no erroneous or dilatory performance of a ministerial act by an employee of the IRS contributed to a delay or error in payment during the period between the first call and the date of the second call. Therefore, respondent did not abuse his discretion in refusing to abate interest on petitioners' income tax liabilities for the period from August 1996 to December 22, 1996.

December 22, 1996 to August 11, 1999

We have found as a fact that during the second call the ACS employee informed petitioner that the additional amounts would be adjusted at the end of the 36 month installment term, and that all the balances would come off at the end. The ACS employee did not clarify to petitioner that unassessed interest would continue to accrue during the installment period, but instead confirmed petitioner's flawed understanding of the agreement. The act by the ACS employee of misinforming petitioners about what their total liability would ultimately be was ministerial. Douponce v. Commissioner, T.C. Memo. 1999-398; see also Smith v. Commissioner, T.C. Memo. 2002-1; Kincaid v. Commissioner, T.C. Memo. 1999-419; sec. 301.6404-2(c), Example (11), Proced. & Admin. Regs. All prerequisites to the act of establishing an installment agreement had been performed during the first call and during the initial processing of petitioners' case by the IRS. The clarification of petitioners' installment agreement did

not require any judgment or discretion on the part of the ACS employee.

As a result of the information they received during the second call, petitioners made payments according to the installment agreement. They made the monthly $225 payments without fail and paid $1,345.84 at the end of the installment period in order to release the lien. We cannot assume that petitioners would not have made earlier or larger payments to avoid the accrual of interest had the ACS employee made clear the correct amount due. Indeed, petitioners paid what they believed was $895.85 more than they were required to pay in order to remove the lien. Their subsequent act of claiming a refund of this amount further supports their position that they believed their total tax liabilities were extinguished after making 36 payments of $225. Therefore, we find that the ACS employee's error in misinforming petitioners caused a delay in payment by petitioners.

We now must decide the appropriate period during which interest should have been abated. The first monthly statement that petitioners received was dated December 11, 1996. Petitioners' notes indicate that they made the payment for that month on December 22, 1996. The second call was made sometime between December 11 and December 22. Because petitioners have not provided an exact date on which the second call was made, we

find that respondent should have abated the interest that accrued from December 22, 1996, until the date it became clear to petitioners that their liabilities had not, in fact, been extinguished. The first notice indicating that there were amounts still outstanding after petitioners' July 22, 1999, payment was the monthly statement dated August 11, 1999. Therefore, we conclude that respondent abused his discretion in refusing to abate interest that accrued during the period from December 22, 1996 to August 11, 1999.

August 11, 1999 to Present

After the August 11, 1999, statement was received by petitioners, petitioners were on notice that their understanding of the installment agreement was incorrect and that some additional amounts were still due. Their failure to make any payments after that date was a result of their decision to challenge respondent's position. There was no erroneous or dilatory performance of a ministerial act on respondent's part to cause this delay. Therefore, we hold that respondent did not abuse his discretion in refusing to abate interest for the period after August 11, 1999.

Decision will be entered

under Rule 155.