T.C. Memo. 2004-167


UNITED STATES TAX COURT


CHRISTINE A. DORMER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10231-03.            Filed July 14, 2004.


During June of 2002, P and R executed a Form
12257, Summary Notice of Determination, Waiver of Right
to Judicial Review of a Collection Due Process
Determination, and Waiver of Suspension of Levy Action,
with respect to P's 1998 taxable year.  The document
specified that P's tax liability would be decreased by
a certain amount and that an accuracy-related penalty
would be abated in full.  P paid the remaining income
tax liability, and R later issued to P a notice of
balance due pertaining to interest and an addition to
tax owing for 1998.

     <u>Held</u>:  R's failure to abate interest for 1998 was
not an abuse of discretion.


<u>Sudhir R. Patel</u>, for petitioner.

<u>James Brian Urie</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  On May 22, 2003, respondent issued a notice of final determination disallowing petitioner's claim for abatement of interest with respect to her 1998 taxable year. Petitioner timely filed a petition with this Court under section 6404(h) and Rule 280 for review of respondent's denial.[1]  The issue for decision is whether respondent's failure to abate interest for the year in issue was an abuse of discretion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed in this case, petitioner resided in Pottsville, Pennsylvania.

During 1997, petitioner received an offer of employment that was subsequently revoked.  The revocation led to petitioner's assertion of various claims against the prospective employer, which were resolved by means of a settlement agreement dated

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

April 27, 1998.  Pursuant to that agreement, petitioner received during 1998 a settlement payment of $30,000.[2]

On April 15, 1999, petitioner filed her Federal income tax return for 1998 and, through withholding, paid the full amount of the tax shown thereon.  On the basis of the advice of her then counsel, who represented her in the dispute with the prospective employer, petitioner did not report the settlement payment on her 1998 return.

Subsequently, the Internal Revenue Service (IRS) took the position that petitioner had underreported her income tax for 1998.  Petitioner at that point terminated her former counsel and employed her present attorney, Sudhir R. Patel (Mr. Patel).  Although the record contains no information on the course or manner of resolution of any ensuing examination, on May 21, 2001, respondent assessed additional tax and a penalty under section 6662 for 1998 in the respective amounts of $10,602 and $1,399.  Respondent also on that date assessed interest due for 1998 in the amount of $1,705.41.  Petitioner was sent notices of balance due on May 21 and June 25, 2001.

---

[2] Although documents and testimony contained in the record are inconsistent as to whether the settlement payment was $30,000 or $35,000, the settlement agreement itself and other contemporaneous material recite the $30,000 figure.  In any event, the discrepancy is immaterial to the issues we consider in this proceeding.

Thereafter, for reasons not otherwise elucidated, respondent on July 23, 2001, abated $3,605 of the assessed tax and $579.93 of the interest, leaving a balance of tax due in the amount of $6,997. Respondent at the same time assessed an addition to tax pursuant to section 6651(a) of $69.97. A further notice of balance due was also sent on that date.

In September of 2001, respondent issued to petitioner notices of intent to levy with respect to the 1998 year. A face-to-face hearing was then held on April 11, 2002, between petitioner, Mr. Patel, and Appeals Officer Judith Hornstein (Ms. Hornstein). At the conference, the parties discussed a potential resolution of the collection dispute, which involved a proposed 25-percent reduction in the tax due from petitioner for 1998 and an abatement in full of the section 6662 penalty. Significantly, neither interest nor the addition to tax under section 6651 was ever discussed at the hearing.

The parties did not agree to a settlement at the April 11, 2002, hearing, but on May 20, 2002, Mr. Patel sent to Ms. Hornstein a letter advising that petitioner wished to resolve the matter for the amount discussed at the April 11 meeting. The letter continued:

> Ms. Dormer has borrowed the funds necessary to pay the amount in a lump sum payment. However, before we make the payment, we will need you to confirm that the $300.00 refund authorized by President Bush as well as Ms. Dormer's 2001 refund has been garnished and applied by the Internal Revenue Service. We will then need to

hear from you as to whom the balance payment should be made payable to and where the payment should be sent. We will also need a release executed by the appropriate representatives of the Internal Revenue Service confirming that once Ms. Dormer makes the lump sum payment that this matter will be resolved in its entirety and that Ms. Dormer will receive no further notices and no further collection attempts or lien efforts will be taken by the service.

Thereafter, according to the stipulation filed in the instant proceeding (and thereby incorporated into our findings):

8.   On May 29, 2002, the parties agreed to a resolution of the Collection Due Process dispute whereby the Service would reduce the tax due from petitioner for the taxable year 1998 by 25% ($1,749.25), from $6,997.00 to $5,247.75, and after subtracting $1,003.00 in credits, the balance of tax due from petitioner for the taxable year 1998 was in the amount of $4,244.75.

9.   The agreement also included abatement of the entire amount of penalty due from petitioner under I.R.C. § 6662 for the taxable year 1998.

On the May 29, 2002, date, Ms. Hornstein mailed to Mr. Patel, as petitioner's representative, a letter enclosing copies of Form 12257, Summary Notice of Determination, Waiver of Right to Judicial Review of a Collection Due Process Determination, and Waiver of Suspension of Levy Action, with the following explanation:

Enclosed are three copies of the Summary Notice of Determination.  Our agreed settlement is on the bottom of page two.  Please sign and return two copies of the Form 12257 to me by June 20, 2002.

The taxpayer's 1998 account was credited with $300 on 8/27/01.  Her $703 overpayment from her 2001 tax return was credited to the 1998 year on 4/1/02.

After Appeals closes the case it will be sent to the Service Center for the agreed changes to be processed. The Service center will then send an adjustment notice to the taxpayer with the exact amount due.

The Form 12257 stated that "The determination of Appeals is: It has been determined to decrease the tax liability from $6,997 to $5,247.75. The $1,399 penalty will be abated in full. The taxpayer will pay the balance due after receipt of the adjustment from the Service Center."

On June 13, 2002, Mr. Patel and Ms. Hornstein held a telephone conversation during which Ms. Hornstein confirmed that the tax due would be $4,244.75, and on June 14, 2002, Mr. Patel mailed to Ms. Hornstein a letter enclosing Forms 12257 executed by petitioner and a check in the amount of $4,244.75. Mr. Patel's letter read:

> Per our recent discussion, enclosed please find two executed form 12257 forms and Christine Dormer's check made payable to the Department of the Treasury in the amount of $ 4,244.75. As we discussed, the $ 4,244.75 figure was arrived at by taking the decreased tax liability amount of $ 5,247.75 and subtracting $ 1,003.00 ($ 300.00 President Bush refund plus $ 703.00 2001 tax year overpayment).

> Please mark Ms. Dormer's record with the Service to reflect payment and resolution of this matter. Should you have any further questions, please do not hesitate to contact me.

Petitioner's account for 1998 was credited with the $4,244.75 payment on June 25, 2002, and on June 27, 2002, William A. Katzmar (Mr. Katzmar), Acting Office of Appeals Team Manager, countersigned the Form 12257 and thereby accepted the settlement

agreement set forth in the document.  Mr. Katzmar then sent petitioner a letter dated July 9, 2002, verifying approval of the agreement and enclosing a copy of the executed Form 12257.  The letter stated in part:

> The agreement we reached has been approved and we will complete our processing of your case.

> We will adjust your account and figure the interest. If you haven't paid the full amount due, the IRS Center will send a bill for any additional amount you owe.  If you are due a refund, the IRS Center will mail it to you.

On October 7, 2002, respondent processed the executed Form 12257, abating tax of $1,749.25 and the $1,399 section 6662 penalty.  A notice of balance due was issued on that date for amounts still outstanding.  Also on October 7, 2002, Mr. Patel sent to Ms. Hornstein a letter which opened as follows:  "This is quickly turning into the case that won't go away.  I received a telephone call from Paula Lane, Appeals Officer, on October 1, 2002.  Ms. Lane claims that Christine still owes $2,026.91."  After recounting various events in petitioner's dealings with Ms. Hornstein, the letter continued:  "During the times we spoke, it was clear to both me and the taxpayer that the dollar amounts we were discussing were the full and total dollar amounts due and owing by the taxpayer".

Mr. Patel thereafter, on petitioner's behalf, prepared a Form 843, Claim for Refund and Request for Abatement, dated November 22, 2002.  The IRS received and filed this document on

December 4, 2002.  The Form 843 requested abatement of interest and penalty for the year 1998 in the amount of $2,026.91. Petitioner's request was assigned to Appeals Officer Michael Bibb, and on April 24, 2003, an Appeals conference was held to discuss petitioner's Form 843.  On May 22, 2003, respondent issued a Full Disallowance--Final Determination, denying petitioner's request for abatement.  Petitioner's petition seeking review of respondent's failure to abate interest under section 6404 was filed with this Court on June 30, 2003.  The petition claims that respondent's determination is based on the following error:  "The Petitioner and the Internal Revenue Service agreed upon and reached a full and final settlement of all disputed issues, as a consequence of which the Internal Revenue Service's attempts to collect additional interest are erroneous."

OPINION

## I.  General Rules

### A.  Section 6404 Generally

Section 6404(e) provides, in relevant part, as follows:

> SEC. 6404(e).  Abatement of Interest Attributable to Unreasonable Errors and Delays by Internal Revenue Service.--
>
>> (1) In general.-- In the case of any assessment of interest on--
>>
>>> (A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal

Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or

(B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial or managerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

Regulations promulgated under section 6404 define "managerial act" as "an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel." Sec. 301.6404-2(b)(1), Proced. & Admin. Regs. A "ministerial act" is "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2(b)(2), Proced. & Admin. Regs. The regulations further specify that "A decision concerning the proper application of federal tax law (or other federal or state law)" is neither a

managerial nor a ministerial act.  Sec. 301.6404-2(b)(1) and (2), Proced. & Admin. Regs.

Section 6404(h)(1) provides the Tax Court with jurisdiction to review denials of requests for abatement of interest under an abuse of discretion standard.  Action constitutes an abuse of discretion where arbitrary, capricious, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999). Therefore, the question here before the Court is whether this case reveals a managerial or ministerial error such that respondent's failure to abate interest reflects abused discretion.

Petitioner's position is that payment of the $4,244.75 resolved her liabilities for 1998 in full, including interest. Thus, petitioner is essentially arguing that the settlement represented a compromise of her 1998 tax year for $4,244.75.  If in fact petitioner reached an enforceable agreement to settle all liabilities for 1998, including interest, with a payment of $4,244.75, failure by IRS employees properly to communicate this information to the Service Center and/or failure by Service Center personnel properly to take into account and input this information in computing any final balance on petitioner's account was a mere ministerial error.  No judgment or discretion would have remained to be exercised once such an enforceable agreement had come into being.

B.  Settlement of Tax Controversies

There exist two principal contexts in which this Court is called upon to consider the consequences of a settlement or purported settlement between parties to a tax controversy. Questions have arisen concerning the effect of a settlement allegedly reached either (1) during the administrative process prior to the docketing of a Tax Court case or (2) after the filing of a Tax Court petition, and the standards we have employed in the two scenarios are not identical.

1.  Prepetition Settlements

This Court has summarized the rules generally applicable to prepetition settlements as follows:

> The law regarding administrative settlement offers is well established.  Regulations issued by the Internal Revenue Service conclusively establish the procedures for closing agreements and compromises pursuant to sections 7121 and 7122.  Secs. 301.7121-1, 301.7122-1, Proced. & Admin. Regs.  These procedures are exclusive and must be satisfied in order to effectuate a compromise or settlement which will be binding on both the taxpayer and the Government. * * * [Rohn v. Commissioner, T.C. Memo. 1994-244.]

See also Urbano v. Commissioner, 122 T.C. ___, ___ (2004) (slip op. at 15-16) ("it is firmly established that section 7121 sets forth the exclusive means by which an agreement between the Commissioner and a taxpayer concerning the latter's tax liability may be accorded finality"); Estate of Meyer v. Commissioner, 58 T.C. 69, 70 (1972) ("Section 7121 of the Internal Revenue Code of 1954 sets forth the exclusive procedure under which a final

closing agreement as to the tax liability of any person can be executed."); Harbaugh v. Commissioner, T.C. Memo. 2003-316 ("It is well settled that section 7122 and the regulations thereunder provide the exclusive method of effectuating a valid compromise of assessed tax liabilities."); Ringgold v. Commissioner, T.C. Memo. 2003-199 ("The law regarding compromises is well established.  The regulations and procedures under section 7122 provide the exclusive method of effectuating a compromise.").

For instance, pertinent regulations require that any closing agreement or offer-in-compromise be submitted and/or executed on or in the specific form prescribed by the IRS.  Secs. 301.7121-1(d), 301.7122-1(d), Proced. & Admin. Regs.[3]

The above principle of exclusivity derives from the early ruling by the U.S. Supreme Court in Botany Worsted Mills v. United States, 278 U.S. 282 (1929).  In construing a predecessor of section 7122, the Supreme Court opined that "Congress intended

---

[3] Sec. 301.7122-1, Proced. & Admin. Regs., contains an effective date provision stating that the section applies to offers-in-compromise pending on or submitted on or after July 18, 2002.  Sec. 301.7122-1(k), Proced. & Admin. Regs.  Previous temporary regulations by their terms apply to offers-in-compromise submitted on or after July 21, 1999, through July 19, 2002.  Sec. 301.7122-1T(j), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39027 (July 21, 1999).  The final and temporary regulations do not differ materially in substance in any way relevant here, and temporary regulations are entitled to the same weight and binding effect as final regulations.  Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996).  For simplicity and convenience, citation is to the final regulations.

by the statute to prescribe the exclusive method by which tax cases could be compromised" and noted that specification of a particular mode "includes the negative of any other mode."  Id. at 288-289.

As one example of this general foreclosure of nonstatutory alternatives, it has been explained:

> the provisions for compromising tax cases are found in
> §§ 7121 and 7122 of the Internal Revenue Code.  These
> provisions are exclusive and strictly construed.  See
> Botany Worsted Mills v. United States, 1928, 278 U.S.
> 282, 49 S.Ct. 129, 73 L.Ed. 379.  Because of this
> exclusive method, no theory founded upon general
> concepts of accord and satisfaction can be used to
> impute a compromise settlement, Moskowitz v. United
> States, 285 F.2d 451, 453, 152 Ct.Cl. 412 (1961), and
> therefore none resulted from the government's
> acceptance and cashing of appellant's check. * * *
> [Bowling v. United States, 510 F.2d 112, 113 (5th Cir.
> 1975).]

See also Urbano v. Commissioner, supra at ___ (slip op. at 17).

However, the Supreme Court in Botany Worsted Mills v. United States, supra at 289, left open the question of whether in limited circumstances equitable estoppel might be applied in the context of an otherwise unenforceable agreement, as follows:

> And, without determining whether such an agreement,
> though not binding in itself, may when executed become,
> under some circumstances, binding on the parties by
> estoppel, it suffices to say that here the findings
> disclose no adequate ground for any claim of estoppel
> by the United States.

Accordingly, this and other courts have considered estoppel arguments.  See, e.g., Smith v. United States, 328 F.3d 760, 765-766 (5th Cir. 2003) (and cases cited thereat); Boulez v.

<u>Commissioner</u>, 76 T.C. 209, 214-217 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987).

   2.   <u>Postpetition Settlements</u>

Once a case becomes docketed in this Court, a different framework of rules is typically applied.  Specifically, "'it "is not necessary that the parties execute a closing agreement under section 7121 in order to settle a case pending before this Court, but, rather, a settlement agreement may be reached through offer and acceptance made by letter, or even in the absence of a writing."'"  <u>Dorchester Indus. Inc. v. Commissioner</u>, 108 T.C. 320, 330 (1997) (quoting <u>Manko v. Commissioner</u>, T.C. Memo. 1995-10) (quoting <u>Lamborn v. Commissioner</u>, T.C. Memo. 1994-515)), affd. without published opinion 208 F.3d 205 (3d Cir. 2000).

In this connection, a settlement is a contract, and general principles of contract law govern whether a settlement has been reached.  <u>Id.</u>; <u>Robbins Tire & Rubber Co. v. Commissioner</u>, 52 T.C. 420, 435-436 (1969), supplemented by 53 T.C. 275 (1969).  To wit, a prerequisite to the formation of a contract is mutual assent to its essential terms, arrived at through offer and acceptance. <u>Dorchester Indus. Inc. v. Commissioner</u>, <u>supra</u> at 330.

   3.   <u>Interpretation and Invalidation of Settlements</u>

Under either the prepetition or the postpetition rubric, interpretation, or invalidation, of the settlement thereby reached will again rest largely on contract law.  <u>Dutton v.</u>

Commissioner, 122 T.C. 133, 138 (2004); Robbins Tire & Rubber Co. v. Commissioner, supra at 435-436.  In general, such settlements will not be set aside in absence of fraud or mutual mistake. Dutton v. Commissioner, supra at 138; Dorchester Indus. Inc. v. Commissioner, supra at 330; Stamm Intl. Corp. v. Commissioner, 90 T.C. 315, 320-321 (1988); Korangy v. Commissioner, T.C. Memo. 1989-2, affd. 893 F.2d 69 (4th Cir. 1990); see also sec. 301.7122-1(e)(5), Proced. & Admin. Regs.  A unilateral mistake is not enough to justify relief from an otherwise valid settlement. Stamm Intl. Corp. v. Commissioner, supra at 320-321; Korangy v. Commissioner, supra.  As noted by this Court in quoting 3 Corbin on Contracts, section 608 (1960):

> "If the mistake of one party to a written instrument is in thinking that it contains a larger promise by the other party than in fact it does, and the other party has no reason to know of this mistake, of course the mistaken party cannot hold the other to the large promise that he did not make, by getting reformation or otherwise. * * * " [Korangy v. Commissioner, supra.]

II.  Analysis

The petition in the instant case was filed on June 30, 2003. The parties had agreed to the $4,244.75 figure at issue here on May 29, 2002, and had executed the pertinent Form 12257 in June of 2002.  Hence, we deal in this scenario with the import of a prepetition administrative settlement.

As previously mentioned, petitioner's argument here rests on the idea that she settled or compromised her 1998 liabilities in

full with payment of the $4,244.75. However, even if the parties had in fact agreed to such a resolution, a point which we will address <u>infra</u>, the agreement would not be legally binding.

Petitioner does not contend, nor is there evidence, that the parties complied with the procedures specified under section 7121 or 7122 for either a closing agreement or an offer-in-compromise. Rather, petitioner admitted at trial that she did not sign an offer-in-compromise or closing agreement form, and petitioner's counsel conceded that petitioner was not relying on any argument that an agreement under section 7122 had been reached. Furthermore, because the relevant negotiations took place in a prepetition setting, any other general theories, such as accord and satisfaction, would be insufficient to create a legally binding settlement.

Nonetheless, the conclusion that the facts here could not support the existence of a legally binding compromise for $4,244.75 does not end the inquiry. Petitioner submits on brief that respondent "must be equitably estoppel [sic] from pursuing any further assessments against Ms. Dormer after the June 2002 agreement was reached and Ms. Dormer's settlement check received."

Equitable estoppel is a judicial doctrine that operates to preclude a party from denying its own acts or representations that induced another to act to his or her detriment. <u>Wilkins v.</u>

<u>Commissioner</u>, 120 T.C. 109, 112 (2003); <u>Hofstetter v.</u>
<u>Commissioner</u>, 98 T.C. 695, 700 (1992). In tax contexts,
equitable estoppel will be applied against the Government only
with the utmost caution and restraint and upon the establishment
of prerequisite elements: (1) A false representation or
wrongful, misleading silence by the party against whom the
estoppel is claimed; (2) an error in a statement of fact and not
in an opinion or statement of law; (3) ignorance of the true
facts by the taxpayer; (4) reasonable reliance by the taxpayer on
the acts or statements of the one against whom estoppel is
claimed; and (5) adverse effects suffered by the taxpayer from
the acts or statements of the one against whom estoppel is
claimed. <u>Wilkins v. Commissioner</u>, <u>supra</u> at 112; <u>Norfolk S. Corp.</u>
<u>v. Commissioner</u>, 104 T.C. 13, 60 (1995), supplemented by 104 T.C.
417 (1995), affd. 140 F.3d 240 (4th Cir. 1998); see also <u>Lignos</u>
<u>v. United States</u>, 439 F.2d 1365, 1368 (2d Cir. 1971).

Here, the record fails to show the existence of the required
elements for equitable estoppel. Petitioner claims:
"Respondent, in giving Ms. Dormer a final payoff figure of
$4,244.75, made a misrepresentation to Ms. Dormer." The
difficulty with this statement is that the evidence does not
establish that the $4,244.75 amount was ever represented as a
"final payoff figure" by respondent.

Specifically, the record does not reflect that the $4,244.75 figure was ever represented as other than the "payoff" amount for petitioner's income tax liability, exclusive of penalties, additions to tax, or interest. Each of the foregoing four items appears to have been considered and treated independently by respondent throughout the administrative process. At the hearing, for instance, resolution of the tax liability by means of a 25-percent reduction was discussed, while resolution of the accuracy-related penalty focused on abatement in full. A separate basis for settlement was thus proposed for the two items broached at the conference.

Conversely, both a section 6651(a) addition to tax and interest were assessed as of the date of the hearing, but neither was addressed. Moreover, since these items are not penalties, there exist no grounds for claiming that respondent represented they would be abated in full. Likewise, because the $4,244.75 figure was computed by reducing petitioner's $6,997 tax liability (which amount did not include interest, etc.) by 25 percent and then crediting 2001 refunds of $1,003, respondent by this calculation would not have represented, and would in fact have countered any notion, that the addition to tax or interest was incorporated in the liabilities to be settled by the 75-percent "payoff" amount.

This distinction among the various components of petitioner's 1998 liabilities was consistently maintained by respondent in the Form 12257 memorializing the agreement. The document stated: "It has been determined to decrease the tax liability from $6,997 to $5,247.75. The $1,399 penalty will be abated in full."

In addition, rather than implying that a final payment amount had been calculated, the correspondence sent by respondent repeatedly indicated that further adjustments could be forthcoming. The May 29, 2002, letter accompanying the Form 12257 explained: "After Appeals closes the case it will be sent to the Service Center for the agreed changes to be processed. The Service center will then send an adjustment notice to the taxpayer with the exact amount due." The Form 12257 itself noted that "The taxpayer will pay the balance due after receipt of the adjustment from the Service Center." The July 9, 2002, letter confirming respondent's approval of the settlement and sent after receipt of petitioner's $4,244.75 check is even more explicit: "We will adjust your account and figure the interest. If you haven't paid the full amount due, the IRS Center will send a bill for any additional amount you owe. If you are due a refund, the IRS Center will mail it to you."

Moreover, Ms. Hornstein's testimony at trial reflects that she at no time considered interest, or settlement thereof, to be

one of the issues before her at the collection hearing.  For instance, when questioned at trial regarding the letter that accompanied petitioner's $4,244.75 check and requested the marking of petitioner's account "to reflect payment and resolution of this matter", Ms. Hornstein explained:

> A   * * * As far as I'm concerned, payment of the tax is resolution.  The interest is calculated as of the date payment is made and it's done by the Service Center, not by the appeals office.
>
> Q   I'm sorry.  One more time.  As far as you were concerned, receipt of the check resolved the matter--
>
> A   Result [sic] of the check resolved the tax matter and I do not--as far as I'm concerned, it closed my case and it was then closed out of the appeals office to go to the Service Center for the computation of the interest up until the date that it was paid.

Hence, Ms. Hornstein explained that her references in conversations with Mr. Patel to the $4,244.75 were to the amount of "the tax"; i.e., the income tax liability reflected in transcripts of petitioner's account for 1998. Accordingly, while Mr. Patel and/or petitioner may have had a different understanding of the meaning of "tax", the evidence does not show that Ms. Hornstein at any time affirmatively misrepresented that $4,244.75 was a "final payoff figure" in the sense intended by Mr. Patel.

It is also noteworthy that each letter from petitioner that used language such as "resolved" or "resolution" in reference to petitioner's case was followed by one of the above-described

written communications from respondent that alerted petitioner to the possibility of future adjustments. Thus, the Court would be hard pressed to find even misleading silence, much less affirmative misconduct. The statements regarding adjustments likewise call into question whether reliance by petitioner on $4,244.75 as a "final payoff figure" was reasonable in any event. The Court concludes that the circumstances of this case are not such as to warrant application of equitable estoppel.

The matter at bar presents a scenario where the objective evidence and the governing settlement document show that the parties reached agreement as to the resolution of specified components of petitioner's liabilities for the 1998 taxable year. Petitioner's understanding that the bargain encompassed all amounts due for 1998 was at most a unilateral mistake, a belief that the agreement contained a larger promise by respondent than in fact it did, which would not support a reformation or other form of relief. Although we sympathize with petitioner's position, controlling law affords no basis upon which we may enforce a complete settlement of petitioner's 1998 liabilities for $4,244.75.

Accordingly, in absence of an enforceable settlement of all 1998 liabilities, it cannot be said that an error, ministerial or otherwise, was committed in computing the balance due on petitioner's account. Furthermore, petitioner has not so much as

alleged any other managerial or ministerial errors or delays that occurred in the processing of her case, and our review of the record has likewise revealed none.  Accordingly, section 6404(e) would not authorize an abatement of interest in these circumstances, and the Court must uphold respondent's determination.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.