T.C. Memo. 2013-273

UNITED STATES TAX COURT

FINCOURT B SHELTON PC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1769-11L.                    Filed December 2, 2013.

Fincourt B. Shelton (an officer), for petitioner.

<u>Harry J. Negro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  This proceeding was commenced in response to a Notice of

Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1]

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times, unless otherwise indicated.

[*2] The issues for decision are: (1) whether there was a valid offer-in-compromise; (2) whether a compromise should be imputed under the concept of accord and satisfaction; (3) whether equitable estoppel should be applied against respondent; and (4) whether the settlement officer abused her discretion in determining petitioner was not eligible for currently not collectible (CNC) status.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioner's principal place of business was in Pennsylvania.

Fincourt B. Shelton is an attorney and has been practicing law since 1980. Fincourt B Shelton PC (hereinafter petitioner) is a professional corporation under the laws of the Commonwealth of Pennsylvania. Petitioner was incorporated on December 23, 1996. Mr. Shelton is the president and sole owner of petitioner.

Petitioner filed Forms 941, Employer's Quarterly Federal Tax Return, for 12 periods ending between March 31, 2003 and 2006, but failed to make timely payments of the amounts due. Petitioner owed approximately $140,000.

On January 24, 2007, the revenue officer received a Form 656, Offer in Compromise, from petitioner offering to pay $70,000 to compromise the balance

[*3] owed.  However, petitioner did not submit the $150 application fee or 20% of the amount offered that are required to be submitted with Form 656.  On January 24, 2007, the revenue officer called Mr. Shelton and left a voice mail message informing him that she did not make offer-in-compromise determinations and that any decision with respect to the offer would be made by an offer specialist.  On January 29, 2007, Mr. Shelton called the revenue officer, who informed him that petitioner would need to submit the $150 application fee and 20% of the amount offered before the revenue officer could forward the offer-in-compromise to an offer specialist.  The parties stipulated that this offer-in-compromise was not accepted by the Commissioner.

On February 13, 2007, Mr. Shelton called the revenue officer and stated that he was closing his business and that he would make a $120,000 payment to take care of the tax due.  Mr. Shelton said that he was closing petitioner because he could no longer run the business.  The revenue officer informed Mr. Shelton that once she received the $120,000 payment she would close the case as a defunct corporation.  On February 20, 2007, the revenue officer received the $120,000 payment from petitioner.  After the revenue officer applied the $120,000 payment, petitioner still had outstanding employment tax balances due for the periods ending December 31, 2005, and March 31, 2006.  The parties stipulated that the

[*4] $120,000 payment made by petitioner on February 20, 2007, was not part of a term or condition of a Form 656. Petitioner never received a Form 656, or any written acceptance, that was signed by an employee of the Commissioner. In other words, petitioner did not submit the $120,000 payment in conjunction with a Form 656. After receiving the payment, the revenue officer closed petitioner's case as a CNC defunct corporation.

Despite Mr. Shelton stating to the revenue officer that he intended to close petitioner, petitioner filed Forms 1120, U.S. Corporation Income Tax Return, for the taxable years 2008 and 2009. Additionally, petitioner made Federal tax deposits for Form 941 for the period ending September 30, 2010. Because petitioner was still operating and accruing tax liabilities, the CNC defunct corporation status was reversed.

Respondent sent petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated April 15, 2010, advising petitioner that respondent intended to levy to collect its unpaid employment tax liabilities for the periods ending December 31, 2005, and March 31, 2006, as well as a civil penalty for the period ending December 31, 2006, and that petitioner could request a hearing with respondent's Office of Appeals. As of April 15, 2010, petitioner owed $9,361.16 for the period ending December 31, 2005, $14,267.85 for the

**[*5]** period ending March 31, 2006, and $1,215.35 for the period ending December 31, 2006. Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, in which it stated that the underlying tax liabilities had been compromised by the payment made in 2007.

By letter dated May 19, 2010, respondent's settlement officer acknowledged receipt of petitioner's collection due process (CDP) hearing request and scheduled a telephone conference call for June 9, 2010. Mr. Shelton did not call the settlement officer on June 9, 2010. By letter dated June 9, 2010, the settlement officer informed Mr. Shelton that he had failed to call the settlement officer for the scheduled CDP hearing. On June 11, 2010, a CDP hearing was held. Mr. Shelton informed the settlement officer that petitioner had previously paid $120,000 and that petitioner was dissolved and had no assets.

Respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated December 17, 2010, sustaining the levy action. Petitioner timely filed a petition with this Court.

OPINION

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay the tax within 10 days after notice and demand for payment, then the Secretary is authorized to collect the tax by levy upon the person's property.

[*6] Section 6331(d) provides that, at least 30 days before enforcing collection by way of a levy on the person's property, the Secretary is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person. If a taxpayer requests a CDP hearing, he may raise at that hearing any relevant issue relating to the unpaid tax or the proposed levy. Sec. 6330(c)(2). Relevant issues include requests for collection alternatives. See sec. 6330(c)(2)(A)(iii).

1. Whether petitioner's tax liabilities were compromised

Petitioner argues that the $120,000 payment compromised all of its tax liabilities. Respondent disagrees.

Offer-in-compromise

Respondent argues that there was never a valid offer-in-compromise; therefore, petitioner's $120,000 payment did not compromise its remaining tax liabilities.

The settlement of disputed tax liabilities is governed by sections 7121 and 7122, which authorize the Secretary to settle any tax disputes and compromise any civil or criminal case arising under the internal revenue laws. Regulations under section 7122 clarify the procedures required with respect to an offer-in-compromise. "These procedures are exclusive and must be satisfied in order to

[*7] effectuate a compromise or settlement which will be binding on both the taxpayer and the Government." Rohn v. Commissioner, T.C. Memo. 1994-244, 1994 Tax Ct. Memo LEXIS 248, at *12; see also Broz v. Commissioner, 137 T.C. 46, 56 (2011), aff'd, 727 F.3d 621 (6th Cir. 2013); Harbaugh v. Commissioner, T.C. Memo. 2003-316, 2003 Tax Ct. Memo LEXIS 317, at *7 ("It is well settled that section 7122 and the regulations thereunder provide the exclusive method of effectuating a valid compromise of assessed tax liabilities.").

Section 301.7122-1(d)(1), Proced. & Admin. Regs., provides that an "offer to compromise a tax liability pursuant to section 7122 must be submitted according to the procedures, and in the form and manner, prescribed by the Secretary. An offer to compromise a tax liability must be made in writing, must be signed by the taxpayer under penalty of perjury, and must contain all of the information prescribed or requested by the Secretary." Rev. Proc. 2003-71, sec. 4.01, 2003-2 C.B. 517, 517, provides that an "offer to compromise a tax liability must be submitted in writing on the Service's Form 656, Offer in Compromise." See also Godwin v. Commissioner, T.C. Memo. 2003-289, 2003 Tax Ct. Memo LEXIS 292, at *32 ("Taxpayers who wish to propose an offer in compromise must submit a Form 656".), aff'd, 132 Fed. Appx. 785 (11th Cir. 2005). The $120,000

**[\*8]** payment was not part of a term or condition of a Form 656. Petitioner failed to submit a Form 656 with the payment.

Section 301.7122-1(e)(1), Proced. & Admin. Regs., specifically provides that "[a]n offer to compromise has not been accepted until the IRS issues a written notification of acceptance to the taxpayer or the taxpayer's representative." See also Rev. Proc. 2003-71, sec. 8.01, 2003-2 C.B. at 519. We cannot find that a valid compromise was made if there is no written acceptance of the purported agreement from the Commissioner. See Harbaugh v. Commissioner, 2003 Tax Ct. Memo LEXIS 317, at \*8; Ringgold v. Commissioner, T.C. Memo. 2003-199, 2003 Tax Ct. Memo LEXIS 196, at \*4. Petitioner never received any written acceptance from the Commissioner. At trial Mr. Shelton testified that the Commissioner "never accepted the Offer in Compromise."

Petitioner failed to submit a Form 656 with the $120,000 payment, and the Commissioner did not issue a written notice of acceptance. As a result we find that the Commissioner and petitioner did not enter into a valid offer-in-compromise. See Harbaugh v. Commissioner, 2003 Tax Ct. Memo LEXIS 317, at \*8; Godwin v. Commissioner, 2003 Tax Ct. Memo LEXIS 292, at \*32.

**[\*9]**  <u>Accord and satisfaction</u>

On its two-page opening brief, petitioner argues that Mr. Shelton informed the revenue officer that he would make the $120,000 payment, which would take care of all the tax due.  Petitioner argues that the revenue officer agreed to this.  Petitioner asks the Court to impute a compromise under the concept of accord and satisfaction.

"The regulations and procedures under section 7122 provide the exclusive method of effectuating a compromise."  <u>Ringgold v. Commissioner</u>, 2003 Tax Ct. Memo LEXIS 196, at \*3.  "Because of this exclusive method, no theory founded upon general concepts of accord and satisfaction can be used to impute a compromise settlement".  <u>Bowling v. United States</u>, 510 F.2d 112, 113 (5th Cir. 1975) (citing <u>Moskowitz v. United States</u>, 285 F.2d 451, 453 (Ct. Cl. 1961)); <u>see also</u> <u>Dormer v. Commissioner</u>, T.C. Memo. 2004-167, 2004 Tax Ct. Memo LEXIS 172, at \*15.  Accordingly, we will not impute a compromise.

<u>Equitable estoppel</u>

In its opening brief petitioner briefly argued:  "The Service is estopped from attempting to collect the debt".  Petitioner did not cite any cases supporting this argument.

**[*10]**   "[T]he doctrine of equitable estoppel is applied against the Government 'with the utmost caution and restraint.'"  Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), aff'd, 810 F.2d 209 (D.C. Cir. 1987).  In the Court of Appeals for the Third Circuit, to which this case is appealable, for equitable estoppel to apply the aggrieved party must prove:  "(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment."  United States v. Asmar, 827 F.2d 907, 912 (3d Cir. 1987); see also Reuben v. Commissioner, T.C. Memo. 2001-193, 2001 Tax Ct. Memo LEXIS 226, at *3.  Additionally, in asserting a claim of equitable estoppel against the Government, the aggrieved party must prove affirmative misconduct on the part of the Government.  See Asmar, 827 F.2d at 912.  The burden of proof is on the party claiming estoppel.  Id.

We note that there was no affirmative misconduct on the part of the Government.  The revenue officer informed Mr. Shelton that she did not make offer-in-compromise determinations.

Furthermore, "those who deal with the Government are expected to know the law".  Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 63 (1984).  Section 301.7122-1(e)(1), Proced. & Admin. Regs., provides that an offer-in-compromise is not accepted until the Commissioner issues a written notification of acceptance to the taxpayer.  Petitioner never received a written

[*11] notice of acceptance. Mr. Shelton is an attorney and has been practicing law since 1980. Knowledge of the requirement for a written notice of acceptance is imputed to petitioner.

Finally, petitioner suffered no detriment that is legally recognizable. Petitioner is required to pay only the tax that was lawfully owing. Petitioner did not change a position to its detriment. See Reuben v. Commissioner, 2001 Tax Ct. Memo LEXIS 226, at *3-*4.

Accordingly, we hold that equitable estoppel should not be applied against respondent.

Conclusion

We have held that there was not a valid offer-in-compromise, we will not impute a compromise under the concept of accord and satisfaction, and petitioner did not satisfy the requirements to apply equitable estoppel against respondent. As a result petitioner's remaining tax liabilities were not compromised by the $120,000 payment.

2. CNC status

Petitioner requested CNC status as an alternative to levy. The settlement officer determined that petitioner's account was not eligible for CNC status.

[*12]  The Court reviews administrative determinations by the Commissioner's Office of Appeals regarding nonliability issues for abuse of discretion.  Hoyle v. Commissioner, 131 T.C. 197, 200 (2008); Goza v. Commissioner, 114 T.C. 176, 182 (2000).  The determination of the Office of Appeals must take into consideration:  (1) the verification that the requirements of applicable law and administrative procedure have been met; (2) issues raised by the taxpayer; and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary.  Sec. 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).  The settlement officer properly based her determination on the factors required by section 6330(c)(3).

In February 2007 Mr. Shelton represented to the revenue officer that he was closing petitioner.  After the $120,000 payment was made on February 20, 2007, the revenue officer placed petitioner's account in CNC status and treated petitioner as a defunct corporation.  The notes of the revenue officer indicate that she received a copy of the dissolution of the business.  However, despite the fact that Mr. Shelton had informed the revenue officer that he was closing petitioner, petitioner filed Federal income tax returns for the taxable years 2008 and 2009.  Furthermore, petitioner made Federal tax deposits for Form 941 for the period

[*13] ending September 30, 2010.  Finally, on June 11, 2010, Mr. Shelton sent a check for $749.82 to pay petitioner's 2008 tax liability.  We also note that the Web site for the Pennsylvania Department of State shows that petitioner's status was active as of March 8, 2013.

The filing of tax returns, and payment of taxes, for multiple periods after the date on which Mr. Shelton informed the revenue officer that he had closed petitioner indicate that petitioner had not been closed and could have been operating as of the date of the notice of determination.  As a result it was not an abuse of the settlement officer's discretion to deny petitioner's request to be placed in CNC status.[2]  Accordingly, respondent's determination is sustained.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered for

respondent.

---

[2]We note that in its opening brief, petitioner does not argue that the settlement officer abused her discretion in denying petitioner's request to be placed in CNC status.